**Calvin Jerold BURDINE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 69–271.

Court of Criminal Appeals of Texas, En Banc.

Oct. 15, 1986.

Joe Cannon, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Roe Morris and Ned Morris, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, § 19.03(a)(2). After finding the appellant guilty, the jury returned affirmative findings to the special issues under Article 37.071, V.A.C.C.P. Punishment was assessed at death. We affirm.

The appellant was convicted of intentionally and knowingly causing the death of W.T. "Dub" Wise in the course of committing and attempting to commit the offense of robbery. The appellant raises seventeen points of error.[1] He challenges the admission into evidence of several photographs of the deceased taken at the murder scene and at the autopsy; the admission into evidence of his oral statement; the sufficiency of the evidence to support the jury's finding of guilt; the sufficiency of the evidence to support the jury's affirmative finding to special issue number two; the imposition of the death penalty in light of insufficient evidence that he killed or attempted to kill or intended that life would be taken; and, finally, the trial court's charge to the jury regarding the appellant's oral statement. Since the appellant argues that the evidence is insufficient to support both findings of guilt and future dangerousness, a detailed review of the facts is necessary.

On April 20, 1983, the body of the victim, Wise, was discovered lying face down in the north bedroom of his trailer. Wise's hands and legs were bound with cord, and his mouth was gagged. There was a stab wound on Wise's back and blood in the shoulder area and hair.

The State established through competent medical testimony that the cause of Wise's death was two stab wounds to the back. Wise's scalp was lacerated; his mouth was gagged with socks and a pillowcase. The force of the stab wounds was sufficient to break Wise's rib. One of the knife wounds appeared to have been caused by the knife offered in evidence by the State.

The police determined that several items were missing from Wise's trailer: a television, stereo, musical instruments, wallet, checkbook, handgun, automatic bank teller card, a set of keys, a citizen's band radio, and items of clothing. The serial number on the handgun was entered into the National Crime Information Center computer. The gun was described as a Smith and Wesson revolver, gold- and nickel-plated with pearl handles.

The appellant gave an extrajudicial confession to the murder. He also testified at trial, where he limited his participation in the killing to that of an accomplice to the aggravated robbery of Wise.

Viewed in the light most favorable to the prosecution, the evidence showed that the appellant and Wise met in November of 1982. The two men had a homosexual relationship which continued for approximately three and a half months while the appellant was living with Wise. Wise, a night supervisor at Statewide Security Service, obtained a job at the security company for the appellant.

Eventually, the appellant and Wise quarreled about the manner in which Wise handled the appellant's earnings. The appellant testified that Wise asked him to move from the trailer after the appellant refused to prostitute himself for Wise. The appel-

---

1. Since the promulgation of the new Rules of Appellate Procedure, effective September 1, 1986, arguments upon which a direct appeal in a death penalty case is predicated are now referred to as points of error. Tex.R.App.P. 74(d), 210(b) [formerly Tex.R.Crim.App.P. 301 (Vernon 1986); Art. 40.09(9), V.A.C.C.P. (grounds of error)]. Where this Court reviews a case upon a petition for discretionary review, such arguments are still referred to as grounds for review. Tex.R.App.P. 202(d)(4) [formerly Tex.R. Crim.App.P. 304(d)(4) (Vernon 1986)].

lant moved out, and approximately two weeks later he resigned his job at the security company. According to the appellant, Wise subsequently "put a contract out on him."

The appellant then met Douglas McCreight, a homosexual male, who did not know Wise. On April 18, 1983, the appellant and McCreight decided to go to Wise's trailer in order to get money from him. The money was to be obtained either voluntarily or through robbery. The appellant warned McCreight not to try anything "funny" with Wise in his bedroom, because Wise kept a gun there.

Soon after they entered the trailer, McCreight asked to use the bathroom. The appellant and Wise remained in the living room. When McCreight returned to the living room, he was wearing a pair of gloves and carrying Wise's gun and a large hunting knife. McCreight then ordered Wise to lie on the floor. McCreight removed Wise's glasses, and the appellant directed McCreight to take the cord from the telephone; the cord was used to bind Wise's wrists. The appellant told McCreight that something was needed to keep Wise quiet, because he would "squeal like a pig in a slaughterhouse."

The appellant retrieved a pair of socks, which McCreight stuffed in Wise's mouth, and a section of sheet, which the appellant used to tie the gag in place. At this point, the appellant and McCreight made Wise move to another part of the trailer, where they would be less likely to be seen by a neighbor. The appellant and McCreight began to stack items in the living room by the front door so that they could take them later.

The appellant and McCreight then decided that "something had to be done" with Wise because he could identify the appellant. McCreight cut the electrical cord of a clock radio and bound Wise's legs with it. The appellant and McCreight then unsuccessfully attempted to smother Wise to death. They placed Wise face down on the bed with his face on a pillow. McCreight held a pillow over Wise's head, and the appellant held Wise's feet. Wise thrashed around on the bed so much that McCreight was unable to smother him, and Wise sat up on the bed, whimpering and crying. After further discussion, the appellant directed McCreight to hit the top of Wise's head with a lead-filled police sap. McCreight struck Wise several times; Wise bled profusely and lay still.

McCreight and the appellant then left the trailer, taking the stolen items with them. They discussed Wise and again decided that something needed to be done so that he could not identify the appellant. After re-entering the bedroom, McCreight made the sign of the cross and then stabbed Wise in the back. The appellant then told McCreight, "What the hell, hand me the knife," and the appellant also stabbed Wise in the back.

The appellant and McCreight left the trailer and drove to Austin. While in Austin, the appellant pawned a television set and obtained money from different automatic teller machines using Wise's bank card. The appellant and McCreight proceeded from Austin to California. After they arrived in Eureka, California, they pawned Wise's gun for thirty dollars. Within thirty minutes of this transaction, both men were arrested at a local gas station.

After hearing from the Eureka, California police department that Wise's gun had been recovered, Detectives G.T. Neely and R.W. Holland, both Houston police officers, traveled to California on April 28. They met McCreight and the appellant at the local courthouse. At the appellant's initial appearance before a magistrate, he was given *Miranda* [2] warnings.

The officers then conducted separate interviews of McCreight and the appellant. The appellant was again given *Miranda* warnings by Detective Neely. The appellant then gave the officers an oral statement and consented to the search of the

2. *Miranda v. Arizona,* 387 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

pickup truck which he had been driving at the time of his arrest.

In the back of the appellant's truck, the officers found a large hunting knife and some property which had been taken from Wise's trailer, including a suitcase, articles of clothing, some eight-track tapes, and several pieces of jewelry. Pursuant to the appellant's statement, Wise's television and ring were recovered in Austin.

At trial, the appellant testified that only McCreight stabbed Wise. However, the appellant admitted that he had anticipated some violence when he and McCreight went to Wise's trailer. He also admitted that he told McCreight where Wise kept his gun, that he warned McCreight that Wise would "scream like a stuck hog," and that he told McCreight to gag Wise and to take Wise to the back of the trailer if he were going "to do anything." Further, the appellant admitted that he took Wise's property, that he used Wise's automatic bank teller card to obtain money in Austin, and that he pawned the television in Austin.

Two representatives of different banks in Austin testified that Wise's automatic bank teller card was used to obtain money in Austin on April 19, 1983. Tapes of the transactions were shown to the jury.

The manager of an Austin pawn shop identified a pawn ticket given on April 19, 1983 to a white male matching the appellant's description when he pawned a Panasonic television and a gold ring. The pawn ticket was signed "Calvin Jerold Burdine."

Ken Anglin, the owner of a Eureka, California pawn shop identified the appellant as the man who, with a companion, entered his store approximately a month after April 18, 1983. The appellant wanted to sell or pawn a Smith and Wesson chrome-plated revolver with a silver-colored trigger and mother-of-pearl grips. After Anglin bought the gun for thirty dollars, the appellant presented a driver's license with the name Burdine on it. Anglin also noted the license plate number of the car in which the appellant and the other man were traveling. After the appellant and his companion left, Anglin telephoned the Eureka Police

Department to check the serial number of the gun. Subsequently, a Eureka police officer took Anglin to a local gas station, where he identified the appellant and his companion as the men who sold him the gun. At trial, Anglin identified a gun offered by the State as the same gun that he bought from the appellant. That gun had the same serial number and matched the description of Wise's gun.

In point of error thirteen, the appellant asserts that the evidence is insufficient to support a conviction for capital murder and, at most, supported a conviction for aggravated robbery. In his testimony, the appellant denied that he stabbed Wise, naming McCreight as the sole attacker. The appellant bases much of his argument on the testimony of Dr. Aurelio Espinola, the medical examiner. Dr. Espinola testified that either of the two stab wounds could have caused death. He stated that the two wounds differed in width, and only one of the wounds was consistent with being inflicted by the knife offered by the State as the murder weapon. Both the testimony of Dr. Espinola and that of the appellant conflict with the appellant's extrajudicial confession, in which he stated that he and McCreight struck one blow each, and that both wounds were made by the same knife.

When reviewing the sufficiency of the evidence to support a conviction, this Court must review the evidence in the light most favorable to the jury's verdict and consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Burks v. State*, 693 S.W.2d 932 (Tex.Cr.App.1985).

 Notwithstanding the conflicting evidence, the jury was free to conclude from the evidence that the appellant stabbed Wise. In his confession, the appellant admitted that he warned McCreight about Wise's gun; he directed McCreight to bind Wise; he tied Wise's gag in place; he actively participated in the unsuccessful at-

tempt to smother Wise; he directed McCreight to hit Wise on the head with the blackjack; and he stabbed Wise once. Given the medical examiner's testimony indicating that either of the two wounds could have caused death, it is irrelevant which of the two wounds the appellant inflicted. We find that the evidence is overwhelming that the appellant acted as a "principal" in the killing.

■■■ Even if the appellant's confession were disregarded, the evidence is sufficient to support a conviction under the law of parties. V.T.C.A. Penal Code, § 7.02(a)(2). Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense, and encourages the commission of the offense either by words or other agreement. *Cordova v. State*, 698 S.W.2d 107 (Tex.Cr.App.1985); *Tarpley v. State*, 565 S.W.2d 525 (Tex.Cr.App.1978). The evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose. *Brooks v. State*, 580 S.W.2d 825 (Tex.Cr. App.1979). In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to commit the offense. *Beier v. State*, 687 S.W.2d 2 (Tex.Cr.App.1985); *Medellin v. State*, 617 S.W.2d 229 (Tex.Cr.App.1981).

Here, the appellant exhibited a prior understanding that the crime would occur by stating that he felt as if McCreight "was going to start some trouble" and anticipated the possibility of violence when he and McCreight went to Wise's trailer.

In addition, the appellant's testimony indicates that he encouraged, aided, and directed McCreight during the commission of the offense. The appellant told McCreight the location of Wise's gun before they went

to the trailer. After the attack began, the appellant told McCreight that if he were going to do anything to Wise, then he should gag Wise and take him to the back of the trailer. Also, the appellant and McCreight discussed the likelihood of McCreight being able to smother Wise to death. During McCreight's various attacks on Wise, the appellant gathered Wise's property together and moved the truck in position to load the stolen property.

Finally, the appellant's behavior after the murder is evidence of a common design and understanding. After killing Wise, the appellant and McCreight traveled to Austin, where the appellant pawned Wise's television and used Wise's automatic bank teller card to obtain money from Wise's bank account. The two then proceeded to California, where the appellant sold Wise's gun.

We find that the evidence is overwhelming to support the jury's verdict. Point of error thirteen is overruled.

■■ The appellant, in point of error fourteen, challenges the sufficiency of the evidence to support the jury's affirmative finding to special issue two. Art. 37.-071(b)(2),[3] supra. In determining the sufficiency of the evidence to support special issue two, this Court may take into account the facts adduced at the guilt/innocence phase of the trial. *Moreno v. State*, 721 S.W.2d 295 (Tex.Cr.App.1986) (reh'g denied); *Hawkins v. State*, 660 S.W.2d 65 (Tex. Cr.App.1983). The circumstances of the offense itself, if severe enough, can be sufficient to sustain an affirmative finding to the second special issue. *Andrade v. State*, 700 S.W.2d 585 (Tex.Cr.App.1985), cert. denied, —— U.S. ——, 106 S.Ct. 1524, 89 L.Ed.2d 921 (1986). Further, the calculated nature of the defendant's act and the forethought with which he coldly planned and carried out his crime are probative of his propensity to commit future acts of

---

**3.** Article 37.071(b)(2), V.A.C.C.P., reads: "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. . . ."

violence. *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979).

▮ The evidence in this case showed that the appellant and McCreight planned to rob Wise, intending to use violence if necessary. They subsequently agreed "to do something" to Wise in order to prevent him from identifying the appellant. The appellant and McCreight bound and gagged Wise, attempted to smother him, bludgeoned him with a lead-filled blackjack, and eventually stabbed him to death.

In addition, at the punishment stage of the trial, the evidence showed the appellant's bad reputation as a juvenile, as well as adult convictions for arson, burglary, unauthorized use of a motor vehicle, and sodomy. For these offenses, the appellant served penitentiary time in Texas and California.

We find that the evidence is more than sufficient to support the jury's affirmative answer to special issue two. Point of error fourteen is overruled.

In points of error one through seven, the appellant challenges the admission into evidence of six photographs of Wise's body taken at the murder scene and two photographs of the body taken at the autopsy. He contends that the photographs were repetitious and were offered solely to inflame and prejudice the jury, and that any probative value they might have had was negligible compared to their prejudicial effect.

Detective Neely identified the photographs of Wise's body as it appeared when discovered by the police. The six photographs show the upper body from the feet towards the head; the right side of the body with the gagged mouth and bloody neck; a more comprehensive view of the right side of the body with blood on the back and neck; the back with the bound wrists; the left side of the body and shoulder area; and the head and shoulder area. Neely described the appearance of the body at the scene and was permitted, over objection, to testify regarding the contents of the photographs.

Dr. Aurelio Espinola, the medical examiner, performed the autopsy on Wise on April 20, 1983. He described the complete range of Wise's injuries, including the head injuries. The two autopsy photographs in question include a close-up photo of Wise's face and a picture of the scalp laceration.

▮ The admission in evidence of photographs is within the discretion of the trial court, who determines whether they serve a proper purpose in the enlightenment of the jury. *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980); *Terry v. State*, 491 S.W.2d 161 (Tex.Cr.App.1973). A photograph is admissible in evidence if a verbal description of what is depicted in the photograph is also admissible. *Brown v. State*, 696 S.W.2d 913 (Tex.Cr.App.1985); *Lewis v. State*, 676 S.W.2d 136 (Tex.Cr.App.1984). Only where the probative value of the photograph is small and its inflammatory potential great, will it be an abuse of discretion to admit the photograph. *Green v. State*, 682 S.W.2d 271 (Tex.Cr.App.1984), cert. denied, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). Hence, if a verbal description of the body of a murder victim would be admissible, a photograph of the body would also be admissible. *Adams v. State*, 685 S.W.2d 661 (Tex.Cr.App.1985). Similarly, postautopsy photographs are admissible unless they depict mutilation of the victim caused by the surgery in performing the autopsy. *Harris v. State*, 661 S.W.2d 106 (Tex.Cr.App.1983).

▮ In determining whether the trial court erred in admitting photographs in evidence, the controlling factor is whether the probative value of the photographs was greatly outweighed by their prejudicial effect. The prejudicial effect of the photographs may be determined by the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed, and by factors unique to each situation photographed. See generally *Martin v. State*, 475 S.W.2d 265 (Tex.Cr.App.1972); see also *Reimer v. State*, 657 S.W.2d 894 (Tex.App.—Corpus Christi 1983, no pet.).

■ In this case, the photographs in question are black and white; they are gruesome; they are detailed; some are close-ups; the body is bloody and partially clothed. However, the photographs depict the position of the body and the location, nature, and extent of the wounds to the body. They are highly probative of the fact and manner of Wise's death and of the killer's culpable mental state. Although the photographs were cumulative of other evidence, we are not convinced that they were offered by the State *solely* to inflame the minds of the jurors, nor are we convinced that their probative value is outweighed by their prejudicial effect. We conclude that the trial judge did not abuse his discretion in admitting them. Points of error one through seven are overruled.

In points of error eight through ten, the appellant challenges the admission in evidence of the oral statement he made to police officers. Specifically, the appellant asserts that the statement was obtained in violation of his right to counsel; that he was induced to make the statement by police trickery; and that the officers' promise to return him quickly to Houston if he would confess rendered his statement involuntary.

At the hearing on the appellant's motion to suppress,[4] Detective Neely testified that upon their arrival in Eureka, California, he and Detective Holland met Detective Pat Freese of the Eureka Police Department, who had the appellant and McCreight in custody. Freese told Neely that he had given warnings to the appellant but had not questioned him. Shortly thereafter, the appellant appeared before a magistrate, who gave him *Miranda* warnings. At that time, the magistrate asked the appellant if he had a lawyer, and the appellant responded negatively.

The officers then took the appellant and McCreight to an interview room located in the courthouse. After first questioning McCreight separately, Officers Neely and Holland gave the appellant *Miranda* warnings and proceeded to question him. At the outset of the interrogation, the appellant gave the officers a version of Wise's killing which they did not believe. The appellant later modified his story, giving a different version of his role in the killing, and this second account of the murder was tape recorded.

Neely stated that he never heard anyone ask the appellant if he wanted a lawyer, and that he never heard the appellant ask for a lawyer. Further, Neely testified that the statement was made freely and voluntarily, without persuasion or promise of benefit. He specifically denied that either he or Holland promised the appellant that they would take him quickly back to Houston if he made a statement.

The appellant also testified at the hearing. He stated that he requested a lawyer at least an hour before the recording was made. According to the appellant, the officers told him that he did not need a lawyer during the questioning because a California attorney would not be handling his case in Texas. In addition, the appellant testified that at the time of the questioning he was in a weakened physical condition as a result of having undergone surgery seven months previously. After the appellant gave three different versions of the killing, the officers accepted the third version and recorded it. Finally, the appellant testified that the officers told him that he could return to Houston with them the next morning, and have a lawyer appointed for him, if he would make a statement. He claimed that this promise induced him to continue to alter his story so as to "tell them what they wanted to hear."

In his written findings of fact and conclusions of law, the trial judge found that the appellant's oral confession was voluntary; that the appellant was in good physical condition at the time of the questioning; that the appellant was fully advised of his rights by Detective Neely and the magistrate, and the appellant stated he understood his rights; that the appellant had not been mistreated, physically abused, threat-

---

**4.** See *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

ened, or promised anything to induce him to make a statement; that the appellant gave no appearance of exhaustion, hunger, or thirst; that the appellant's statement contained assertions of fact or circumstances that were later found to be true; that the appellant's statement conduced to establish his guilt by enabling Neely to find secreted or stolen property, as well as the knife which the appellant claimed that he and McCreight used to stab Wise; that the appellant was not directly or indirectly promised anything to persuade him to make a statement; that the appellant neither claimed nor showed physical signs at any time from arrest to trial that he had been abused, mistreated, forced, threatened, coerced, or promised anything to make a statement; and that the appellant fully understood his rights and knowingly waived them.

As the trier of fact at the *Jackson v. Denno* hearing, the trial court is the sole judge of the weight and credibility of the witnesses, and in determining the issues in question is free to accept or reject the testimony of any witness, including that of the accused. *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983); *Kelly v. State*, 621 S.W.2d 176 (Tex.Cr.App.1981). If the trial court's findings of fact are supported by the record, this Court's only inquiry will be whether the trial court improperly applied the law to the facts. *Johnson v. State*, 698 S.W.2d 154 (Tex.Cr. App.1985).

 In the case before us, the appellant's contentions that he was denied counsel, that he was induced to confess by a promise, and that he was in poor physical condition were controverted by the testimony of the officers. We hold that the trial court's findings that the appellant waived his right to counsel, that he was made no promises, and that he was in good physical condition are supported by the record. We

find that the trial court did not err in admitting the appellant's confession. Points of error eight through ten are overruled.

In his eleventh point of error, the appellant argues that his oral statement made to police officers should not have been admitted in evidence, because the statement was offered in the form of the officers' testimony rather than the tape recording made at the time the statement was given.

 The appellant urges that since the contents of the tape recording were placed in issue, the best evidence rule applies and would require the State to introduce the tape itself as evidence of the contents of the recording. We disagree. The best evidence rule in effect at the time of the appellant's trial was a common law evidentiary rule pertaining to proof of writings or documents. The rule did not apply to electronic recordings[5] or oral confessions. See *King v. State*, 657 S.W.2d 109 (Tex.Cr.App.1983). Point of error eleven is overruled.

In his twelfth point of error, the appellant complains of the trial court's denial of his motion for mistrial made after a comment by the prosecutor on the appellant's failure to offer in evidence his tape recorded confession.

The following is an excerpt of the prosecutor's direct examination of Detective Holland:

[PROSECUTOR]:

Now, you say that there was a tape recording made of this last statement?

[DETECTIVE HOLLAND]:

Correct.

Q. All right. And does it cover essentially what you just testified here today?

A. Yes, sir, it does.

---

**5.** But cf. Tex.R.Crim.Evid. 1001(1) (effective Sept. 1, 1986) (expanding the application of the best evidence rule to electronic recordings). We note that even if the best evidence rule did apply to the tape recording, the appellant's point of error must fail. At issue here were the con-

tents of the *conversation* on the recording, and not the recording itself. Since Holland participated in the conversation, his testimony describing the interrogation was sufficient for best evidence purposes.

Q. Do you have that tape recording with you?

A. Yes, sir, I do.

Q. *And would you have any objection to Mr. Cannon [defense attorney] playing that tape recording, if he so desired?* [6]

[DEFENSE ATTORNEY]:

If the Court please, I don't think that's a proper question.

THE COURT:

I sustain the objection. Ask any other questions. Sustained.

[PROSECUTOR]:

*You have any objection to it being played?*

[DETECTIVE HOLLAND]:

*None whatsoever.*

The tape was marked for identification. The trial court instructed the jury to disregard the prosecutor's question but denied the appellant's request for a mistrial. The prosecutor then laid the predicate for the admission of the tape recording,[7] but did not offer it in evidence. He also made it known through Detective Holland's testimony that there was a tape recorder on the counsel table *"for the use or benefit of anybody that want[ed] to play it."*

 Generally, to preserve asserted error for review on appeal, a defendant must object in a timely and specific manner at trial. *Granviel v. State,* 552 S.W.2d 107 (Tex.Cr.App.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *Hinkle v. State,* 442 S.W.2d 728 (Tex.Cr. App.1969). In addition, if an objection made in the trial court differs from the complaint made on appeal, a defendant has not preserved any error for review. *Hodge v. State,* 631 S.W.2d 754 (Tex.Cr.App.1982); *Williams v. State,* 549 S.W.2d 183 (Tex.Cr. App.1977).

In the instant case, the defense attorney objected that the prosecutor's question was not "proper" and was "so flagrant and so prejudicial that it should enough be [sic] to make the State's case." This was insuffi-

cient to state a specific legal basis for the objection.

 However, the trial judge sustained the appellant's objection, and the prosecutor thereafter modified his question. The record before us adequately reflects that the trial judge and the prosecutor were aware of the substance of the objection. Therefore, the general objection did not waive the appellant's complaint for purposes of appellate review. See *Zillender v. State,* 557 S.W.2d 515 (Tex.Cr.App.1977).

 The appellant argues that "[t]he [S]tate by its actions shifted the burden of proving the contents [of the recording] to the defense.... The State by its questioning and evidence presented led the jury to only one conclusion: that the tape should be introduced by the defense if it contained anything other than what the [S]tate's witnesses had said." Without expressing any opinion as to whether the prosecutor's strategy was proper, we conclude that the questions were not so prejudicial that they could not be cured by an admonishment to disregard. Any error was thus rendered harmless. Point of error twelve is overruled.

 In point of error fifteen, the appellant relies on *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1983), contending that the evidence does not demonstrate that the appellant killed or attempted to kill or that he intended or contemplated that life would be taken. We disagree. The appellant contradicted this assertion in his confession, wherein he stated that he stabbed Wise and helped in the attempt to smother him. He also testified that he anticipated that "something like that" would happen. Point of error fifteen is overruled.

 In points of error sixteen and seventeen, the appellant asserts that the trial court committed fundamental error in

---

**6.** All emphasis has been added by the author of this opinion unless otherwise indicated.

**7.** See Article 38.22, § 3(a), V.A.C.C.P.

its charge to the jury regarding the appellant's oral statement by instructing the jury that the statement "shall be admissible" and by failing to require a finding of voluntariness before the oral statement could be admitted. Specifically, he complains that the court did not submit the issue of whether the statement was obtained through a promise.

The trial court charged the jury as follows:

> You are instructed that under our law a confession of a defendant made while the defendant was in jail or in custody of an officer and while under interrogation shall be admissible in evidence if it appears that the same was freely and voluntarily made without compulsion or persuasion; further, the oral confession shall be admissible if voluntarily made as aforesaid and if the defendant makes a statement therein which contains assertions of facts or circumstances that are found to be true and which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed.

In addition, the jury was instructed that they could not consider the appellant's confession for any purpose, unless they found that the appellant had been warned of his rights and voluntarily waived his rights prior to making a statement.

We find that the jury was properly charged on the issue of voluntariness, and no error in the trial judge's instructions has been shown.[8] Accordingly, points of error sixteen and seventeen are overruled.

Having considered the appellant's points of error and finding no reversible error, we affirm the judgment of the trial court.

CLINTON, J., concurs in result.

---

**8.** The appellant failed to object to the charge at trial. Under *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985), the appellant must show that he was egregiously harmed and that the error alleged created such harm that he was deprived of a fair and impartial trial. Assuming, *arguendo*, that the charge on voluntariness was erroneous, the error was clearly insufficient to meet the "egregious harm" standard under *Almanza*.