**Jimmy Laverne CAGLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–87–069–CR.**

Court of Appeals of Texas,
Waco.

Feb. 11, 1988.

Rehearing Denied March 10, 1988.

Robert M. Mahanay, Mahanay & Higgins, Cleburne, for appellant.

Dan M. Boulware, Dist. Atty., Joe B. Durham, Asst. Dist. Atty., Cleburne, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendant Jimmy Laverne Cagle from conviction for intentionally and knowingly engaging in conduct causing serious bodily injury to a child, for which he was assessed 75 years in the Texas Department of Corrections.

Jimmy Cagle is a young man who was in October 1986, 21 years old. On October 1, 1986, Ann Hagle moved into Jimmy's mobile home with her child, 8–month–old Rebecca Barnett. Defendant had known Ann since July 1986. Ann was a married woman (but had filed for a divorce) who had been beaten up by her husband and was in distress and defendant took her and her baby to his home for refuge.

On October 10, 1986, defendant came home from work to find the child and mother still at his home. The child was bruised and had fever. The child, Rebecca Barnett, died while defendant was attempting to revive her. The child was taken by medical helicopter ambulance to Harris Hospital in Fort Worth. There was a large fresh bruise on the right side of the child's face from the hairline to the bottom of her cheek. The cause of the bruise was severe trauma. Dr. Harvey, a medical examiner for Tarrant County, testified that he did an autopsy on Rebecca Barnett; that she had a large fresh contusion on the right side of her face over the right cheek; that it was freshly purple and was a fairly immediate occurrence, less than 12 hours old; that it was induced at the time of trauma, produced from something relatively soft, produced by manual trauma from a hand striking the baby's face; that there were older contusions on the child, 5 to 10 days old; that her right arm was broken; that he found evidence of trauma in the vaginal area of the child which had numerous hemorrhages, in reasonable medical probability caused by digital trauma from a finger; that there is no way an adult male can accidently insert a finger into the child; that it would have to be an intentional act; that the cause of death of the child was a large collection of subdural blood under and inside the skull which caused the child to stop breathing and die; that the cause of the bleeding inside the cranial cavity of the baby was due directly to trauma; that a large contusion on the right cheek caused by a blow was the activating factor which caused the shearing of the brain area and death of the child; that in reasonable medi-

cal probability the death of the child resulted from blows struck to the right side of the face.

Defendant testified that he did nothing intentionally to harm the child; that he made an effort to save her; that he lived with the child's mother before October 1, 1986, and after October 1, 1986, in his trailer house; that when he came home on October 10, Ann told him that Rebecca had been injured; that he had seen Ann strike the baby; that she struck the child when it was crying; that defendant forced a sock into the baby's mouth to stop her crying; that he had slapped the baby trying to get her to be quiet; that he had spanked the child's hand; that the child had bruises on her; that he had slapped the baby with his left hand on the cheek; that he slapped her twice on the cheek but not very hard; that he had struck the child on the stomach; that he accidently struck the baby in the vagina; that he believed the child fell and struck her head on the coffee table; that he tried to render the child mouth to mouth resuscitation on the 10th [of October] when she ceased breathing; that she commenced breathing, but stopped again; and that he caused the ambulance to be called.

Defendant further testified that he intended for his hand to come in contact with the baby's face; that he had slapped the child with his hand on several occasions; that he slapped the baby with his left hand but that he never slapped the baby hard enough to injure her.

Both defendant and Ann Hagle made statements in which they admitted slapping and hitting the baby and both statements were admitted into evidence. As noted, defendant was convicted and assessed 75 years.[1]

Defendant appeals on 3 points.

Point 1 asserts the trial court erred in admitting the written statement of defendant because the statement was coerced and was not voluntary.

Defendant was at the hospital the night of October 10 when the baby was pronounced dead and was accompanied to Cleburne by Texas Ranger Turner who took defendant's statement from about 4:30 a.m. until 9:30 a.m.

The trial court conducted a *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing on the admissibility of defendant's statement and filed Findings of Fact and Conclusions of Law on the admissibility of defendant's statement. The court found that: (1) all warnings required by Article 38.22 sec. 2(a), V.A.C.C.P. were given to defendant prior to making the statement to Ranger Turner; (2) the defendant, prior to and during the making of the statement, knowingly, intelligently, intentionally, freely and voluntarily waived the rights set out in the warning prescribed by Article 38.22 sec. 2(a) and was fully complied with; (3) defendant had sufficient mental capacity to understand the warnings and rights given him as required by Article 38.22 sec. 2(a) and sufficient mental capacity to knowingly, intelligently, intentionally, freely and voluntarily waive such rights and that he did so; (4) defendant was not coerced into making the statements; (5) the physical contact between Ranger Turner and defendant did not render the statement involuntary; and (6) Ranger Turner made no promise of help or leniency to induce defendant to make the statement.

While defendant's testimony at the hearing differed in some respects from that of Ranger Turner's, where the facts are disputed the trial judge is the sole judge of the credibility of the witness and of the weight to be given the testimony. *White v. State*, Ct.Crim.Appls, 591 S.W.2d 851 (1979).

The trial judge found the testimony of Ranger Turner to be credible and the testimony of defendant of little weight. The voluntariness of the confession is borne out by defendant's own testimony.

Point 1 is overruled.

---

1. Ann was also convicted and assessed 50 years by the jury. Her case it not the subject of this appeal.

Point 2 asserts the trial court erred by admitting into evidence the hearsay statement of Adeline Ann Hagle.

 Ann Hagle made a written statement in which she admitted that she had hit her 8–month–old baby and stated that defendant had also hit the baby; that defendant had hit the baby on the face; and that he again hit the baby on the face shortly before she stopped breathing.

Defendant and Ann Hagle were tried jointly in the trial court. Both defendant's and Ann's statements were admitted at trial. Defendant's only objection to Ann's statement was that it was hearsay.

The trial court admitted Ann's statement but instructed the jury that it could only be used against her, and that it could not be considered for any purpose as evidence of the guilt of another and could not be considered as any evidence of guilt of defendant.

In a factually similar case, where a defendant has confessed and the confession interlocks with the implicating co-defendant's confession, the co-defendant's confession at a joint trial is admissible where appropriate limiting instructions are given. *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 173 (1979).

Ann's confession stated that she hit the baby and further stated that defendant slapped the baby in the face. Defendant testified he had slapped the baby on the face, but stated he did not slap hard enough to have injured the child.

Point 2 is overruled.

 Point 3 asserts the trial court erred in admitting into evidence State's Exhibits 1, 2 and 5, because each of them was gruesome and did not accurately reflect the condition of the child in that she had been removed from the scene of the alleged injury; that heroic efforts had been exerted on the body and artificial equipment and devices were attached; and for the further reason that the photographs are repetitive and highly prejudicial.

The exhibits are photos of the dead body of the baby and were admitted over defendant's objections. The photos showed the child's naked body, with artificial devices and tubes attached.

 If a verbal description of the body of the victim is admissible, the photographs of the body are admissible. *Burdine v. State,* Ct.Crim.Appls, 719 S.W.2d 309 (1986); *Heckert v. State,* Ct.Crim.Appls, 612 S.W.2d 549 (1981).

The photographs were probative of the fact and manner of the baby's death.

Point 3 is overruled.