TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00327-CV






In the Matter of J. A. S.







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-19,002, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING







 We are asked to determine whether a trial court must appoint a guardian ad litem
for a juvenile when the juvenile appears for a delinquency hearing without his parents. Because
J.A.S.'s aunt and uncle attended the hearing with the juvenile, we conclude the failure to appoint
a guardian ad litem was not reversible error. We affirm the trial court judgment. 


Background


 Pamela Griffin arrived at her home and observed J.A.S. climbing out of a window
leaving her house. While attempting to apprehend J.A.S., Griffin saw a second juvenile, C.L., 
behind the fence near the back of the property. C.L. told the police that J.A.S. was involved and
showed the police where J.A.S. lived. J.A.S. admitted being in Griffin's home without
permission and without permission to remove property. The 98th District Court, sitting as the
Juvenile Court of Travis County, adjudicated J.A.S. to have engaged in delinquent conduct by
committing the offense of burglary of a habitation. See Tex. Pen. Code Ann. § 30.02 (West
Supp. 2000), (1) Tex. Fam. Code Ann. § 51.03 (West Supp. 2000) and placed J.A.S. on probation
for one year. J.A.S. raises two issues on appeal.


Discussion


 Section 51.11(a) provides that "[i]f a child appears before the juvenile court without
a parent or guardian, the court shall appoint a guardian ad litem to protect the interests of the
child." Tex. Fam. Code Ann. § 51.11(a) (West 1996). J.A.S. contends that the appointment of
a guardian is mandatory and that his adjudication should be reversed because the trial court did
not appoint a guardian for him. It is undisputed that J.A.S. attended the hearing with his aunt and
uncle, not with his parents. J.A.S.'s uncle and aunt are not his legal guardians. The State
concedes that the trial court did not technically comply with section 51.11, but argues that the
error was harmless.

 Despite the mandate to appoint a guardian in section 51.11, the failure to appoint
a guardian has been found to be harmless error. See Flynn v. State, 707 S.W.2d 87, 89 (Tex.
Crim. App. 1986). In that case, Flynn, a juvenile, appeared in court without his parents but with
his aunt, Placida Tenorio. Although Tenorio had raised Flynn from birth, she had not adopted
him and was not his legal guardian. The trial court proceeded with the adjudication without
appointing a guardian for Flynn. The court of criminal appeals concluded that the trial court erred
by failing to appoint a guardian; however, the court determined the error was harmless. Id. at
89. According to the court, the "basic principle of [the Family] code is that every child who
appears before a juvenile court must have the assistance of some friendly, competent adult who
can supply the child with support and guidance." Id. (quoting Robert O. Dawson, Delinquent
Children and Children in Need of Supervision, 5 Tex. Tech L. Rev. 511, 529 (1974)). Because
Tenorio, the individual who raised Flynn all his life, was a mother figure for Flynn, and because
no one was more likely to render him friendly support and guidance, the court concluded that the
"spirit, if not the letter of the statute was met" and held the error was harmless. Flynn, 707
S.W.2d at 89.

 J.A.S. relies on In re A.G.G., 860 S.W.2d 160 (Tex. App.--Dallas 1993, no writ), (2)
in which the court of appeals reached the opposite result. A.G.G. attended his delinquency
hearing accompanied by his grandmother, not his parents. Id. at 162. The trial court did not
appoint a guardian and proceeded with the adjudication. See id. The grandmother not only failed
to render friendly support and guidance, but testified against A.G.G. Id. The court of appeals
reversed the adjudication based on the trial court's failure to appoint a guardian. Id.

 Unlike A.G.G., J.A.S.'s uncle and aunt did not testify against J.A.S. Of the
various relatives mentioned during J.A.S.'s hearing, only his uncle and aunt attended the hearing. 
At the conclusion of the trial, the trial judge asked J.A.S.'s uncle where J.A.S. should be placed
during probation. The uncle wanted J.A.S. to stay with him and his wife, not J.A.S.'s mother. (3) 
According to the court summary prepared by a probation officer, shortly before the delinquency
hearing, J.A.S. lived with this mother, brother and grandparents. However, due to his mother's
incarceration, J.A.S. had lived the previous five years with his mother's cousin. J.A.S.'s mother
only returned home to care for J.A.S. in March 1999. (4) J.A.S.'s uncle also stated that he was
concerned with J.A.S.'s well-being if he continued to live with his mother. J.A.S.'s aunt stated
that J.A.S.'s mother knew about J.A.S.'s delinquency hearing, yet she failed to appear. J.A.S.'s
uncle believed J.A.S. needed a stable home which he and his wife could provide. J.A.S.'s uncle
and aunt demonstrated concern for his well-being and a willingness to assist in his care and in
effect acted as his guardian ad litem although not formally appointed. As in Flynn, we conclude
the trial court's error in failing to appoint a guardian for J.A.S. was harmless. We overrule
J.A.S.'s first issue.

 In his second issue, J.A.S. challenges the legal sufficiency of the evidence in
support of the judgment. In determining a legal sufficiency challenge in a criminal conviction,
we must determine after reviewing all the evidence in a light most favorable to the verdict whether
any rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Krueger v. State, 843 S.W.2d
726, 727 (Tex. App.--Austin 1992, pet. ref'd).

 A person commits the offense of burglary if, without the effective consent of the
owner, he: (1) enters a habitation, or a building (or any portion of a building) not then open to
the public, with intent to commit a felony, theft, or an assault; or (2) remains concealed, with
intent to commit a felony, theft, or an assault, in a building or habitation; or (3) enters a building
or habitation and commits or attempts to commit a felony, theft, or an assault. Tex. Pen. Code
Ann. § 30.02(a) (West Supp. 2000). A burglarious entry may be shown by circumstantial
evidence. Gilbertson v. State, 563 S.W.2d 606, 608 (Tex. Crim. App. 1978).

 A person is criminally responsible for the conduct of another if "acting with intent
to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense." Tex. Pen. Code Ann. § 7.02(a)(2) (West 
1994). Evidence that the actor is physically present at the commission of the offense and
encourages the commission of the offense by words or other agreement is sufficient to support a
conviction under the law of parties. Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App.
1986). The evidence must show that at time of the offense, the parties were acting together and
each contributing some part towards the execution of their common purpose. Id. Events
occurring before, during and after the commission of the offense, as well as the defendant's
actions which show an understanding and common design to commit the offense are considered. 
Id.

 The evidence in the light most favorable to the conviction reveals that when Pamela
Griffin returned home, she saw J.A.S. jumping out of a window in her house. Although she
called him by name, he ran. Griffin's son apprehended another juvenile, C.L., near Griffin's
backyard. C.L. showed Griffin's son where items stolen from the Griffin home were hidden. 
C.L. told the police about J.A.S.'s involvement and identified where J.A.S. lived.

 When the police apprehended J.A.S., he was upset and crying. J.A.S. testified that
he had been in the Griffin home prior to the offense and knew some of its contents. He admitted
going into the house with C.L., but denied breaking the window or taking any items from the
house. He testified that he did not tell C.L. to steal anything, but admitted that he did not have
permission to be in the Griffin home and that the purpose of being in the home was to take
property from it. C.L. admitted that he and J.A.S. broke the window and entered the home to
steal Playstation games and accessories. Griffin had not given J.A.S. or C.L. permission to enter
her home and she had not given them permission to remove any property.

 We disagree with J.A.S.'s contention that there must be direct evidence that he
planned the burglary or assisted C.L. in locating the room with the Playstation. We may rely on
evidence of J.A.S.'s understanding and common design to commit the offense. See Burdine, 719
S.W.2d at 315.

 The evidence supports the conclusion that J.A.S. was present at the time of the
commission of the offense and encouraged the commission of the offense by providing information
about the contents of the Griffin home and accompanied C.L. inside the house with knowledge
that C.L. entered the home with the purpose of stealing property. The evidence is sufficient to
demonstrate a common understanding and design to commit the offense. A reasonable trier of fact
could have concluded the two juveniles acted together, each contributing to the execution of their
common plan--removal of property from the Griffin home. We overrule J.A.S.'s second issue. 

Conclusion


 Having overruled both of J.A.S.'s issues, we affirm the judgment.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: April 27, 2000

Do Not Publish

1. The 1999 amendment to section 30.02 is not relevant to the disposition of this appeal. We
cite to the current version for convenience. 
2. J.A.S. also cites Urtado v. State, 605 S.W.2d 907 (Tex. Crim. App. 1980). Urtado is not
a juvenile case. It is a sufficiency review under the now discredited "reasonable hypothesis
analytical construct." See Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991).
3. Ultimately, the trial court placed J.A.S. in the care of his mother and grandparents for the
period of probation. 
4. The delinquency hearing occurred in April 1999. 


ner, he: (1) enters a habitation, or a building (or any portion of a building) not then open to
the public, with intent to commit a felony, theft, or an assault; or (2) remains concealed, with
intent to commit a felony, theft, or an assault, in a building or habitation; or (3) enters a building
or habitation and commits or attempts to commit a felony, theft, or an assault. Tex. Pen. Code
Ann. § 30.02(a) (West Supp. 2000). A burglarious entry may be shown by circumstantial
evidence. Gilbertson v. State, 563 S.W.2d 606, 608 (Tex. Crim. App. 1978).

 A person is criminally responsible for the conduct of another if "acting with intent
to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense." Tex. Pen. Code Ann. § 7.02(a)(2) (West 
1994). Evidence that the actor is physically present at the commission of the offense and
encourages the commission of the offense by words or other agreement is sufficient to support a
conviction under the law of parties. Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App.
1986). The evidence must show that at time of the offense, the parties were acting together and
each contributing some part towards the execution of their common purpose. Id. Events
occurring before, during and after the commission of the offense, as well as the defendant's
actions which show an understanding and common design to commit the offense are considered. 
Id.

 The evidence in the light most favorable to the conviction reveals that when Pamela
Griffin returned home, she saw J.A.S. jumping out of a window in her house. Although she
called him by name, he ran. Griffin's son apprehended another juvenile, C.L., near Griffin's
backyard. C.L. showed Griffin's son where items stolen from the Griffin home were hidden. 
C.L. told the police about J.A.S.'s involvement and identified where J.A.S. lived.

 When the police apprehended J.A.S., he was upset and crying. J.A.S. testified that
he had been in the Griffin home prior to the offense and knew some of its contents. He admitted
going into the house with C.L., but denied breaking the window or taking any items from the
house. He testified that he did not tell C.L. to steal anything, but admitted that he did not have
permission to be in the Griffin home and that the purpose of being in the home was to take
property from it. C.L. admitted that he and J.A.S. broke the window and entered the home to
steal Pla