

NUMBER 13-08-497-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GILBERT LOPEZ,                                          **Appellant,**

**v.**

THE STATE OF TEXAS,                                    **Appellee.**

**On appeal from the 94th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Vela
Memorandum Opinion by Justice Vela**

A jury convicted appellant, Gilbert Lopez, of burglary of a habitation with the intent to commit aggravated assault, a first-degree felony. *See* TEX. PENAL CODE ANN. § 30.02(a)(3), (d) (Vernon 2003). The jury assessed punishment at five years' imprisonment, plus a $10,000 fine. In a single issue, appellant challenges the factual sufficiency of the

evidence to support his conviction.  We affirm.

## I. Factual Background

### A. State's Evidence

Arthur Lopez lived on Buenos Aires Street in Corpus Christi, Texas.  On April 3, 2005, appellant's sister, Lisa Lopez, and her boyfriend, Gabriel Barrera, fought with Arthur's wife and stepson.  The fight occurred on the street in front of Arthur's home, but Arthur denied any involvement in the fight.  After the fight, Arthur's wife and stepson went to the hospital.  Later that evening, between 7:00 and 8:00 p.m., appellant, Jose Naranjo, and several men "kicked in" the front door to Arthur's house.  Arthur ran into his bedroom, where appellant hit him with a revolver on the front of his head, and Naranjo hit him with a gun on the back of his head.  He fell onto a comforter, and after the intruders left, he went into the bathroom.  He saw blood "squirting" and "dripping everywhere."  While he was at the hospital, his father-in-law cleaned up the blood.  Arthur testified that neither appellant, Naranjo, nor any of the other men had permission to enter his home.

Arthur's stepdaughter, who was outside his house following the street fight, testified that "a couple of minutes after" her mother and brother went to the hospital, she saw three cars pull up in front of Arthur's home.  Five men, including appellant, got out and "forced entry" through the front door and went into Arthur's house.  She said that appellant and a couple of the other men were carrying guns, but she was not sure what kind of guns they had.  She thought this happened "somewhere around 5 and 7 p.m." and that the "first fight" occurred "about 20 or 30 minutes before the second incident."

On the evening of Arthur's assault, Starla Wyatt, a crime-scene investigator ("CSI"), went to Arthur's home to photograph the scene.  She photographed blood in the bathroom and in the hallway in front of the bathroom.  She did not recall seeing blood in any of the

2

bedrooms. She said that if she had seen blood in a bedroom, she would have photographed it. She did not recall seeing any blood outside of the house and testified that "it appear[ed] that" the assault occurred inside the house.

## B. Defense Evidence

Lisa Lopez testified that on the date in question, she and Gabriel Barrera lived "10 to 13" houses down the street from Arthur. Barrera testified that during the street fight, he hit Arthur about ten times in the face with his fists. On cross-examination, Lopez testified that "it's possible" Barrera caused the injuries to Arthur's head and that Arthur "could have been bleeding" because of this fight.

Appellant testified that on the date in question, he did not see Arthur, and he did not go into Arthur's house and hit him with a gun. He stated that he and his girlfriend, April Metting, stopped near Arthur's home shortly after the street fight. Because Lisa Lopez and Barrera were going to the hospital by ambulance, he drove Lopez's vehicle to her house and parked it there. Appellant testified that after he parked Lopez's vehicle, he and Metting drove to "Peter Pipers," which took "[m]aybe five minutes." They arrived at Peter Piper between 7:00 and 7:30 p.m. and left about 8:00 p.m. Metting confirmed that appellant did not leave Peter Piper before 8:00 p.m.

Metting's friend, Breanna Campbell, testified that on the date in question, she saw appellant and Metting at Peter Piper "probably about right at 7, 7:15." She did not see any blood on appellant. When she left Peter Piper at 7:45 p.m., they were still there.

## C. State's Rebuttal Evidence

Arthur's sister-in-law saw the street fight and testified that Arthur did not get involved in the fight. She stated that after the street fight, appellant, Naranjo, and some others pushed in the front door to Arthur's home and came in with "guns in their hands." She hid

3

in a closet and heard "a lot of kicking and banging." On cross-examination, she said this incident occurred "anywhere from between five and eight."

Lydia Curiel, an interim Metrocom director for the Corpus Christi Police Department, testified that on April 3, 2005, a dispatcher received a call from 1509 Buenos Aires at 7:48 p.m. Curiel stated that the "call was entered as a robbery/home invasion in progress" and that appellant and Naranjo were the suspects.

## II. DISCUSSION

In his sole issue, appellant challenges the factual sufficiency of the evidence to support his conviction. Specifically, he argues that the evidence is "too weak" to show that he was one of the men who entered Arthur's home and assaulted him.

## A. Standard of Review

In a factual-sufficiency review, the only question to be answered is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the fact finder's verdict"; or (2) "considering conflicting evidence, the factfinder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When a court of appeals conducts a factual-sufficiency review, it must defer to the jury's findings. *Id*. The court of criminal appeals has "set out three 'basic ground rules' implementing this standard." *Id*. (quoting *Watson*, 204 S.W.3d at 414). First, the appellate court must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict. *Id*. Second, the appellate court "may only find the evidence factually insufficient

4

when necessary to 'prevent manifest injustice.'" *Id*. (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Third, the appellate court must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict. *Id*. Although the verdict is afforded less deference during a factual-sufficiency review, an appellate court is not free to "override the verdict simply because it disagrees with it." *Id*.

**B. Applicable Law**

Our review of a factual-sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti*, 273 S.W.3d at 281. "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

The indictment in this case alleged, in relevant part, that appellant and Naranjo "did then and there intentionally or knowingly enter a habitation without the effective consent of ARTURO LOPEZ, the owner thereof, and attempted to commit or committed the felony offense of AGGRAVATED ASSAULT . . . ." (emphasis in original). The elements of burglary of a habitation as charged in the indictment are: (1) a person (2) without the effective consent of the owner (3) intentionally and knowingly (4) enters a habitation (5) and commits or attempts to commit aggravated assault, a felony. *See* TEX. PENAL CODE. ANN. § 30.02(a)(3). A person commits the offense of assault if that person intentionally, knowingly, or recklessly causes bodily injury to another. *Id*. § 22.01(a)(1) (Vernon Supp. 2009). "'Bodily injury' means physical pain, illness, or any impairment of physical

5

condition." *Id*. § 1.07(a)(8).  Assault becomes aggravated assault if the person committing the assault uses or exhibits a deadly weapon during the commission of the assault.  *Id*. § 22.02(a)(2).   A deadly weapon is defined, in relevant part, as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. . . ."  *Id*. § 1.07(a)(17).

**C. Law of Parties**

Section 7.02(a)(2) of the penal code states:  "(a) A person is criminally responsible for an offense committed by the conduct of another if:  . . . "(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]"  *Id*. § 7.02(a)(2) (Vernon 2003).  "Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense, and encourages the commission of the offense either by words or other agreement."  *Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986); *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985).  Because an agreement between parties to act together in common design can seldom be proven by words, the State often must rely on the actions of the parties, shown by direct or circumstantial evidence, to establish an understanding or a common design to commit the offense.  *Miller v. State*, 83 S.W.3d 308, 314 (Tex. App.–Austin 2002, pet. ref'd).  The evidence must show that at the time of the offense, the parties were acting together, each contributing some part towards the execution of their common purpose.  *Burdine*, 719 S.W.2d at 315.  In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the crime and may rely on the defendant's actions that show an understanding and common design to commit the crime.  *Burdine*, 719 S.W.2d at 315; *Cordova,* 698 S.W.2d

at 111; *Beier v. State*, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985). Circumstantial evidence may suffice to show that an accused is a party to an offense. *Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977); *Miller*, 83 S.W.3d at 314.

**D. Analysis**

The State's evidence showed that: (1) Arthur was not involved in the street fight; (2) the CSI testified that "it appear[ed] that" the assault occurred inside Arthur's home; (3) appellant and Naranjo forced their way through the front door to Arthur's home and entered without his permission; (4) while inside the home, appellant hit Arthur with a revolver, and Naranjo hit him with a gun; (5) Arthur suffered injuries from these blows; (6) the offense occurred between 7:00 and 8:00 p.m.; (7) police dispatch received a call about the incident at 7:48 p.m.; and (8) Curiel testified the "call was entered as a robbery/home invasion in progress" and that appellant and Naranjo were the suspects.

The contrary evidence showed: (1) appellant was with his girlfriend at Peter Piper between 7:00 and 8:00 p.m.; (2) Campbell did not see any blood on appellant when she saw him at Peter Piper; (3) the CSI did not recall seeing any blood in any of the bedrooms in Arthur's house; (4) prior to the burglary, Barrera hit Arthur about ten times in the face with his fists; and (5) appellant testified he did not see Arthur on the date in question and did not go into Arthur's house and hit him with a gun.

Appellant directs our attention to the alibi evidence, as well as the evidence that Barrera hit Arthur in the face several times and that the CSI did not recall seeing blood in any of the bedrooms. However, Arthur and his sister-in-law identified appellant and Naranjo as two of the men who broke into his house. The identification of appellant by an eye-witness is sufficient to support his conviction. *See Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (stating "[i]t is well established that a

7

conviction may be based on the testimony of a single eyewitness.") (citing *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)); *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd) (holding witness's testimony identifying defendant is sufficient, standing alone, to support conviction). Further, Arthur identified appellant and Naranjo as the persons who hit him with a revolver and a gun, respectively. "Testimony using any of the terms 'gun', 'pistol' or 'revolver' is sufficient to authorize the jury to find that a deadly weapon was used." *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979). Thus, Arthur's testimony is sufficient to satisfy the element that a deadly weapon was used to assault him. *See id*.

With respect to whether appellant was a party to the offense, taking into account his active role with Naranjo in forcibly entering Arthur's house and assaulting him, the jury could have reasonably found that appellant and Naranjo acted together under a common design to enter Arthur's home and assault him. *See Wygal*, 555 S.W.2d at 469 (stating that "[c]ircumstantial evidence may be sufficient to show that one is a party to the offense."); *see also Miller*, 83 S.W.3d at 314.

Because the jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony, we cannot, on appeal, weigh the credibility of the witnesses. *See Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Here, the jury chose to believe the State's evidence and disbelieve the testimony of appellant and his alibi witnesses. Weighing all of the evidence in a neutral light, the evidence is not so weak that the verdict is clearly wrong and manifestly unjust. *See Laster*, 275 S.W.3d at 518. Also, there is no objective basis in the record to conclude that the great weight and preponderance of the evidence contradicts the jury's verdict. *See Watson*, 204 S.W.3d at 417. We hold that the evidence is factually sufficient to support the conviction. Appellant's

sole issue is overruled.

### III. Conclusion

We affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 25th
day of March, 2010.