Affirmed and Memorandum Opinion filed December 15, 2005









Affirmed
and Memorandum Opinion filed December 15, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00797-CR

____________

 

JOSEPH
ANTWAN BONNER, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

__________________________________________________________________

 

On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 968,543

__________________________________________________________________

 

M E M O R A N D U M   O P I N I O N

Challenging his conviction for
aggravated robbery, appellant Joseph Antwan Bonner asserts that  the trial court reversibly erred in admitting
evidence of an extraneous offense and that the evidence supporting his conviction
is legally and factually insufficient because the accomplice testimony offered
by the State was not sufficiently corroborated. 
We affirm. 








I.  Factual and Procedural Background

Shortly
after midnight on November 17, 2003, Dierdre Williams drove into her apartment
complex.  Williams noticed that a white
Mazda Protege had followed her through the open gate and around to the back of
the complex where her apartment was located. 
The white Protege pulled into a parking space near where she
parked.  Williams exited her vehicle and
opened the back door to retrieve some items. 
At this time, a light-skinned tall black male, later identified as
appellant, approached her from the side, pointed a gun at her neck, and said, AB----, give
me the keys or you=re going
to die.@  The man had his face covered.  Another man grabbed the keys from Williams,
and she ran to her apartment. 

Williams heard the men trying to
operate her vehicle, and then ultimately abandon the pursuit because they could
not work its standard transmission. 
Williams went back to the parking lot, and watched while the two men who
had approached her drove away with two other men in the white Protege.  She made eye contact with one of the men,
wrote down the vehicle=s license
plate number, and called the police. 

Houston police officer Guy Majors
arrived on the scene approximately twenty minutes later, talked to Williams,
and issued a general radio broadcast with the car=s
description.  Officer Peter Comer
received the broadcast and spotted the white Protege, matched the license
number, and saw that four black men were inside the vehicle.  Officer Comer ran the license plate in his
computer and learned the Protege had been stolen the day before.  The occupants of the car drove away at a high
rate speed and crashed into a parked vehicle. All four occupants abandoned the
Protege and fled on foot.  








Officer Greg Jelin helped
establish a perimeter around the area and joined in a search for the
suspects.  Officer Jelin found appellant,
who was holding a sawed-off pump-action shotgun wrapped in some sort of
material.  Officer Jelin ordered
appellant to Astop and get down.@  Appellant attempted to escape and went
underneath a fence.  Officer Jelin could
not fit under the fence because of the bulkiness of his on-duty gear.  Shortly thereafter, a private citizen found
appellant hiding behind some bushes. 
Appellant apparently discarded the shotgun.  Police officers and dogs conducted a search
but were unable to retrieve it.  

Williams was presented with a
videotaped line-up from which she positively identified one of the line-up
participants as the lighter-skinned black male who was sitting in the Protege=s back
seat and with whom she had made eye contact. 
She could not identify the other lighter-skinned black male that held
the shotgun on her because she never saw his face. Williams testified that
although she could not be completely positive, she was fairly confident that appellant
was the one who had held the gun.  She
based this identification on his height, complexion, and hair. 

Two of appellant=s
accomplices, Floyd Stevenson and Tommy Allison, also testified. Stevenson
stated that he and appellant had stolen the white Protege from Michelle Ranum
the night before they robbed Williams. 
Neither individual had worn masks or gloves while stealing Ranum=s
vehicle.  They targeted Ranum when she
drove her car into her apartment complex. 
They approached Ranum when she exited her car.  Appellant took the keys from Ranum, and
appellant and Stevenson got into the car and drove away.  








Stevenson further testified that
the following evening Allison and another man (Derrick Dancer) joined appellant
and him at Stevenson=s
house.  The four of them conspired to
commit another robbery, got into the stolen Protege, and went to Allison=s house
to retrieve a gun.  Appellant then drove
them to the area of Williams=s
apartment complex where he told them that they were going to rob some drug
dealers.  They decided that they should
steal another car and abandon the stolen Protege.  Stevenson testified that they followed
Williams into her apartment complex. 
Appellant and Allison got out of the car and approached Williams with a
gun in an attempt to steal her car. 
Stevenson testified that they were unable to steal the car because none
of them could operate a standard transmission. 
After being followed by a police officer, and hitting a parked vehicle,
they all abandoned the Protege and fled on foot.  Stevenson testified that he believed appellant
carried the shotgun with him as he ran away. 

Next, Allison testified that he
met appellant, Stevenson, and Dancer on November 17, 2003, and had a discussion
about robbing someone.  Allison further
testified that they all got into the white car, retrieved a shotgun from his
house, and appellant drove them to an area of town to rob Asome drug
dealers.@  Allison testified that they approached
Williams and attempted to steal her car. 
He stated that appellant wore a mask, held a gun to Williams, and
demanded the keys to her car.  Allison
testified that he took the keys from Williams but faced away as much as he
could because his face was not covered. 
When they realized that they could not operate Williams=s car,
they returned to the white Protege and left the complex.

Finally, Michelle Ranum (the
owner of the white Protege and victim of the first robbery) testified that
shortly after midnight on November 16, 2003, appellant and Stevenson (their
faces uncovered) approached her. She testified that they asked her for a cigarette
and light.  When she replied that she did
not have any cigarettes, they walked away. 
Ranum got out of her car and walked to her apartment.  Appellant approached her again and demanded
her keys.  After a struggle, appellant
took her keys and purse.  Ranum testified
that appellant and Stevenson drove away in her car and she called the
police.  Ranum viewed a line-up in which
she immediately identified Stevenson and appellant as her assailants. 

A jury found appellant guilty of
aggravated robbery.  After appellant
pleaded Atrue@ to an
enhancement, the trial court assessed appellant=s
punishment at thirty years=
confinement in the Texas Department of Criminal Justice, Institutional
Division.  

                                                       II.  Issues Presented

Appellant asserts four issues on
appeal: 








(1)       The trial court committed reversible error in allowing
testimony that the appellant had obtained the white Protege during an unrelated
offense, and this extraneous offense was not relevant to any issue in the case.

(2)       The trial court committed reversible error in allowing
testimony that the appellant had obtained the white Protege during an unrelated
offense, and the probative value of this extraneous offense was substantially
outweighed by unfair prejudice.[1]

(3)       The evidence is legally insufficient to support his conviction
for aggravated robbery because there was no corroboration of the accomplice
testimony of Floyd Stevenson and Tommy Allison. 

(4)       The evidence is factually insufficient to
support his conviction for aggravated robbery because there was no
corroboration of the accomplice testimony of Floyd Stevenson and Tommy Allison.[2]

III.  Analysis

A.        Did the trial court abuse its discretion in admitting
evidence of an extraneous offense?

In his
first two issues, appellant argues that the trial court abused its discretion
in allowing testimony from Stevenson, Allison, and Ranum in regard to the
stolen Protege.  Appellant argues that
the trial court should have excluded the evidence that appellant was driving a
stolen vehicle during the robbery of Williams. 
Appellant=s only
attempt at preserving this complaint was during a pre-trial motion in limine
hearing: 

[Trial
Court]:  All right.  You have a couple of motions you want to talk
about? 

[Defense
Counsel]:   Thank you, Your Honor.  We have filed a motion in limine in this
case; and I believe Ms. Shipley, the prosecutor, has agreed to everything
except for No.2, which involves the testimony by Michelle Ranum involving the
extraneous robbery that occurred the night before this robbery.  And in discussions with the Court, it=s my impression that is
going to come in as part of their tryingCyou know, corroboration as
far as the co-defendant=s testimony.  And what I would like to do is just make it
clear that she=s agreed to everything
else.  Is that correct? 








[Prosecutor]:
            I haven=t officially read through
the motion in limine, but I think that you told me that it was just plain
vanilla otherwise.  If that motion in
limine is what you told me it is, then I have no other disagreement with your
motion in limine.  I do not intend to go
into the defendant=s record unless he gets up
on the witness stand.  I will advise all
of the witnesses to not go into any previous convictions of the defendant of
any kind. Kyle had said something like the State acting like they=ve got the white hat and
the defense having the black hat; I wouldn=t go into anything like
that.  Oh, and gang membership, I would
not go into that in my case in chief. . . .

[Trial
Court]:  Make your objection.  Go ahead. 

[Defense
Counsel]:   As far as Ms. Ranum, I would
like to object under 404(b) of the Texas Rules of Evidence because I don=t think it=s necessary to the State=s case in a probative
value [sic].  Under 403 it is
significantly outweighed by the prejudicial effect and the fact that she=s going to say he
committed a robbery the night before this robbery.  I think the prejudicial effect is
obvious.  I think it greatly outweighs
any kind of probative value. 

I would also
object under the Fifth Amendment to the Constitution, Article 1, Section 19, of
the Texas Constitution.  It=s a violation of the due
process rights, his right to be tried on the occasion [sic] for which he=s charged and not some
other case.  And what I would ask is thatC

[Trial
Court]: That objection is overruled.  And what I will allow you to do is I will
have that objection stand during that testimony so that you don=t have to get up in front
of the jury and constantly make objections. 
It will be preserved from that standpoint. 

[Defense Counsel]:   Thank you, Your Honor.  That=s all I
have . . .

Appellant did not make any
further objections during the testimony of Ranum, or that of Stevenson or
Allison.  








As to the
testimony of Stevenson and Allison regarding the stolen Protege, appellant did
not voice any objection in the trial court and thus did not preserve
error.  See Ethington v. State,
819 S.W.2d 854, 858 (Tex. Crim. App. 1991). 
Presuming for the sake of argument that appellant preserved error as to
the admission of Ranum=s
testimony and that it was an abuse of discretion to allow such testimony, the
error would be harmless because the same evidence was admitted through
Stevenson=s testimony without objection.  See Leday v. State, 983 S.W.2d 713, 718
(Tex. Crim. App. 1998).  Stevenson=s
testimony in regard to the robbery of Ranum and her white Protege was
substantially similar to that of Ranum=s
testimony:

Q:        Okay.  Let=s talk about it.  Did you and B-Down go out on November 16th of
2003 and get a white Mazda Protege together? 

A:        Yes, ma=am. 

Q:        Did you talk about getting it before you did?

A:        Not really. 

Q:        Did you say that you wanted to go get a car or did he say he
wanted to go get a car? 

A:        Actually, it was kind of made up at the spur of the
moment.  It wasn=t like we planned it out;
it just sort of happened. 

Q:        So, just sort of a spur-of-the-moment thing? 

A:        Yes ma=am. 

Q:        Do you remember what area of town you were in when you got
that white Mazda Protege? 

A:        The southwest. 

Q:        Southwest? 

A:        Uh-huh. 

Q:        Do you remember the address that you were at? 

A:        If I=m not mistaken, I think
Westheimer probably. 

. . .

Q:        Who was inside the white Mazda Protege? 

A:        Ms. Michelle. 

Q:        And that=s the person that you now
know as Michelle Ranum? 

A:        Yes, ma=am. 

Q:        Did you know her before this night? 

A:        No, ma=am. 

. . .








Q:        Well, tell me, what did you do in getting the car from
Michelle Ranum? 

A:        I took the keys and drove off. 

Q:        Did you talk to Michelle?

A:        Not to my knowledge.  I
don=t remember, no. 

Q:        You don=t remember talking to her?


A:        Huh-uh. 

Q:        Did Joseph Bonner talk to Michelle Ranum? 

A:        Yes, ma=am.

Q:        What did he say to her? 

A:        I don=t remember.  He just demanded it. 

. . .

Q:        Do you remember specifically what he said?  You can quote him. 

A:        AGive me
the keys.@ 

Because
appellant did not object to the admission of the same evidence through
Stevenson, we conclude that any error in admitting Ranum=s
testimony regarding the stolen Protege was harmless.  See Valle v. State, 109 S.W.3d 500,
509 (Tex. Crim. App. 2003). Accordingly, we overrule appellant=s first
two issues. 

B.    Is the evidence legally
and factually insufficient to support appellant=s conviction of aggravated
robbery?

 

In his
third and fourth issues, appellant argues that the accomplice testimony of
Stevenson and Allison was not sufficiently corroborated and therefore should
have been excluded.  Appellant further
argues that without their testimony, the remaining evidence is not legally or
factually sufficient to support his conviction. 
Appellant does not contest that the evidence is legally and factually
sufficient with their testimony. 
We conclude that Stevenson=s and
Allison=s
testimony was sufficiently corroborated and that the evidence (with or without
this testimony) is legally and factually sufficient to support his conviction. 








In
evaluating a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether we, as a
court, believe the State=s
evidence or believe that appellants= evidence
outweighs the State=s
evidence.  Wicker v. State, 667
S.W.2d 137, 143 (Tex. Crim. App. 1984). 
The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex.
Crim. App. 1991).  The jury, as the trier
of fact, Ais the sole judge of the
credibility of the witnesses and of the strength of the evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses=
testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
When faced with conflicting evidence, we presume the trier of fact
resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993).  Therefore, if any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App. 1997).








In
contrast, when evaluating a challenge to the factual sufficiency of the
evidence, we view all the evidence in a neutral light and inquire whether the
jury was rationally justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  A reviewing
court may find the evidence factually insufficient in two ways.  Id. 
First, when considered by itself, the evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt.  Id. 
Second, after weighing the evidence supporting the verdict and the
evidence contrary to the verdict, the contrary evidence may be strong enough
that the beyond-a- reasonable-doubt standard could not have been met.  Id. at 484B85.  In conducting the factual-sufficiency review,
we must employ appropriate deference so that we do not substitute our judgment
for that of the fact finder.  Id.
at 481B82.  Our evaluation should not intrude upon the
fact finder=s role as the sole judge of the
weight and credibility given to any witness=s
testimony.  Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 
In conducting a factual-sufficiency review, we must discuss the evidence
appellant claims is most important in allegedly undermining the jury=s
verdict.  Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).

As
charged in this case, a person commits the offense of aggravated robbery if, in
the course of committing theft and with intent to obtain or maintain control of
the property, he intentionally or knowingly threatens or places another in fear
of imminent bodily injury or death and uses or exhibits a deadly weapon.  See Tex.
Pen.Code Ann. ''
29.02(a), 29.03(a) (Vernon 1994).  A
person is criminally responsible for an offense committed by the conduct of
another if acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense.  Tex. Pen. Code Ann. '
7.02(a)(2) (Vernon 1994).  Evidence is
sufficient to support a conviction under the law of parties where the actor is physically
present at the commission of the offense and encourages the commission
of the offense either by words or other agreement.  Burdine v. State, 719 S.W.2d 309,
315 (Tex. Crim. App. 1986) (emphasis added). 
In determining whether a defendant participated in an offense as a
party, the court may examine the events occurring before, during, and after the
commission of the offense and may rely on actions of the defendant which show
an understanding and common design to commit the offense.  Id.  Further, circumstantial evidence may be used
to prove party status.  Ransom v.
State, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994).








Article
38.14 of the Code of Criminal Procedure provides that a conviction cannot stand
on accomplice testimony unless it is corroborated by other evidence that tends
to connect the accused with the offense.  Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 2005); Colella v. State, 915 S.W.2d 834, 838 (Tex. Crim. App.
1995); see also St. Julian v. State, 132 S.W.3d 512, 516 (Tex. App.CHouston
[1st Dist.] 2004, pet. ref=d).  Corroborating evidence is insufficient if it
merely shows the commission of an offense.  Tex. Code Crim. Proc. Ann. art. 38.14; Cathey
v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999).  In assessing the sufficiency of corroborative
evidence, we eliminate the testimony of the accomplice witness from
consideration and examine the testimony of the other witnesses to ascertain
whether the non‑accomplice evidence tends to connect the accused with the
commission of the offense.  St. Julian,
132 S.W.3d at 516.  The non‑accomplice
evidence need not by itself establish the accused=s guilt
beyond a reasonable doubt.  Id.  Rather, some evidence must exist that tends
to connect the accused to the commission of the offense.  Id.

The trial
testimony tends to connect appellant to the aggravated robbery of Williams,
even without the testimony of Stevenson and Allison.  Proof that a defendant was at or near the
crime scene at or about the time the crime occurred, coupled with other
suspicious circumstances, even seemingly insignificant ones, may well be enough
to connect the defendant to the offense. 
Dowhitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App.
1996); Cox v. State, 830 S.W.2d 609, 611 (Tex. Crim. App.
1992).  

In this
case, the police officers testified at trial that they spotted the white
Protege a short time after the description of the car was broadcasted.  The occupants in the vehicle crashed into a
parked vehicle, and the Protege=s four
occupants fled on foot.  Officer Jelin
found appellant holding a wrapped up sawed-off pump action shotgun.  He ordered appellant to Astop and
get down,@ but appellant escaped under a
fence.  Soon thereafter, a private
citizen found appellant hiding behind some bushes in a nearby location.  








Evidence
of flight evinces a consciousness of guilt and therefore would tend to provide
suspicious circumstances that is coupled with appellant=s
presence near the crime scene.  See
Bigby v. State, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994); Logan
v. State, 510 S.W.2d 598, 600 (Tex. Crim. App. 1974) (holding that
when unexplained, flight has long been deemed indicative of a Aconsciousness
of guilt@); Torres
v. State, 794 S.W.2d 596, 598 (Tex. App.CAustin
1990, no pet.) (holding that a Aconsciousness
of guilt@ is
perhaps one of the strongest kinds of evidence of guilt).  We conclude that this evidence tends to
connect appellant to the commission of the robbery of Williams.  See, e.g., Herron v. State, 86 S.W.3d
621, 633 (Tex. Crim. App. 2002) (stating that appellant=s
possession of stolen property is a factor that connects appellant to offense);
Hernandez v. State, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) (holding
that the state connected the defendant to the offense by offering evidence that
(1) a few months before the murder the defendant had been in possession of a
gun similar to that used in the murder (a twelve gauge shotgun), and that (2)
the defendant fled the area without explanation after the offense); Jackson
v. State, 745 S.W.2d 4, 13 (Tex. Crim. App. 1988) (concluding that the
State connected the defendant to the offense through the fact that the
defendant was driving the deceased=s car the
day after the murder, and the defendant was found in possession of a watch
similar to one owned by the victim). 
Article 38.14 requires only some non‑accomplice evidence tending
to connect the defendant with the crime, not non‑accomplice evidence for
every element of the crime. Vasquez v. State, 56 S.W.3d 46, 48
(Tex. Crim. App. 2001).  Therefore, we
conclude that the non‑accomplice evidence is sufficient to connect
appellant to the aggravated robbery.  See
Hernandez, 939 S.W.2d at 177B79.  The testimony presented by the State shows
that appellant encouraged and aided in the commission of the aggravated robbery
of Williams. 

The
evidence presented in this case is both legally and factually sufficient to
support appellant=s conviction
of aggravated robbery.  Accordingly, we
overrule appellant=s third
and fourth issues. 

Having
overruled all of appellant=s issues,
we affirm the judgment of the trial court.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Memorandum Opinion filed
December 15, 2005.

Panel consists of Justices Hudson, Frost, and
Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  We address
issues one and two together because of their similarity. 





[2]  We address
issues three and four together.