

NUMBER 13-08-00085-CR

# COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JUAN MIGUEL TORRES,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

On appeal from the 197th District Court of Willacy County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion by Justice Garza**

Appellant, Juan Miguel Torres, was charged by indictment with two counts of aggravated assault, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)-(b) (Vernon Supp. 2008). A jury convicted appellant of both counts, and appellant was sentenced to two years' incarceration in the Institutional Division of the Texas Department of Criminal Justice ("TDCJ-ID") for the first count and eight years' incarceration for the second count. The prison terms were ordered to run concurrently. On appeal, appellant

argues that: (1) the evidence supporting his convictions is legally and factually insufficient; and (2) the trial court erred in overruling his motion to suppress and abused its discretion in admitting statements made by appellant to police. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying offenses pertained to a fight that transpired on December 28, 2006. On the evening in question, Samuel Garza, Irene Sanchez, Erin Rodriguez, Greg Lee Ramirez, Rudy Loya, Eduardo Andrade, and Max Grimaldo were barbecuing at Loya's apartment in Raymondville, Texas. Grimaldo testified at trial that during the barbecue, he received a call from appellant and his brother, Noe Torres, threatening to "fuck [him] up." Grimaldo did not think anything of the telephone call, and the barbecue continued. Later that evening, the group, referred to at trial as "My Block,"[1] left the apartment on foot to go home.

A white Chevrolet Malibu occupied by several girls drove past the group as the My Block members walked home. As the Malibu drove by, the girls shouted obscenities at the group. Several My Block members shouted obscenities back at the girls in the Malibu, and the My Block members subsequently cut through a field near the "Charter School" to avoid any further confrontations. Shortly thereafter, the Malibu and another car, a brown Cadillac, surrounded the group. The occupants got out of the cars and began walking toward the My Block members, throwing rocks as they approached them.[2] According to

---

[1] Testimony at trial established that the group called itself "My Block," but group members denied that "My Block" was a criminal street gang.

[2] Patrol Supervisor Marcelino Flores, then an investigator with the Raymondville Police Department, identified the occupants of the cars as Robert Vasquez, Gilbert Vasquez, Nina Guzman, Martin Vera, Noe Torres, Guadalupe Ramirez, Rolando Mendoza, George Mendoza, and appellant. Later testimony revealed that several others were present at the scene and involved in the fight, including David and Kenny Villa, Chris Guzman, and an individual identified as "Casper." Only the males in both groups participated in the fight. The females in both groups watched the fight from afar.

2

Grimaldo, several of the rocks struck My Block members.  Rodriguez testified that once they stopped throwing rocks at the My Block members, the car occupants told one of their members to get a pipe or some other weapon.  Rodriguez noted that the My Block members were severely outnumbered and that a fight ensued.[3]

Several witnesses stated that the fighting lasted five or six minutes, but the entire confrontation lasted thirty to forty minutes.  Garza testified that the car occupants started the fight and that he was attacked by several people, including appellant.  Garza noted that he received cuts on his arm and a stab wound on the side of his body.  Garza recalled that appellant used a knife to cut his arm and that Noe stabbed him in the side of his body.[4] Grimaldo testified that he was attacked by several different people, including Robert Vasquez, Gilbert Vasquez, and Rolando Mendoza.  Grimaldo further testified that Rolando brought a knife to the fight and that Rolando used that knife to stab him in the side of his body.  As a result of their stab wounds and cuts, Garza and Grimaldo were hospitalized for several days.

At trial, the State called most of the My Block members to testify about the fight.  All of the witnesses testified that Grimaldo and Garza were stabbed during the fight and that the fight had occurred in a dimly lit field, which limited visibility.  Only Grimaldo and Garza recalled seeing knives being used by the car occupants.  Furthermore, several of the witnesses testified that they did not recall that any weapons were used during the fight and that they believed the fight was solely a fist fight.  Rodriguez, however, stated that she saw one of the car occupants using a weapon "like a stick."  In any event, after Noe stabbed

---

[3] Loya and several other My Block members testified that they did not desire to fight appellant and his friends.

[4] Investigator Flores testified that based on his law enforcement experience, a knife is a deadly weapon that can cause serious bodily injury.

3

Garza, the groups dispersed and the My Block members asked a local resident to call for help. Police investigating the scene found pools of blood and a bloody shirt at the scene. No weapons were found.

The following day, appellant voluntarily went to the Raymondville police station to give a statement about what occurred that night. Appellant was interviewed on December 29, 2006, at 1:10 p.m.[5] Prior to questioning appellant, police read appellant his *Miranda* rights, and appellant initialed the document explaining the *Miranda* rights. *See generally Miranda v. Arizona*, 384 U.S. 436 (1966). During the interview, appellant admitted that he had a knife that evening and that he brought the knife to the fight. Appellant also stated that he could not read. Raymondville Police Department Patrol Supervisor Marcelino Flores testified that he was aware that appellant could not read but that he was unaware that appellant allegedly could not write. However, Flores noted that he asked appellant whether he understood the *Miranda* rights that were read to him, and appellant told him that he understood his rights and subsequently initialed the document explaining his rights. Flores also testified that in the interview, appellant later denied using a weapon at the fight and accused Rolando of bringing a knife to the fight. Appellant told Flores that "we gave all of our stuff to Nina and we were expecting to have a clean fight."

On September 13, 2007, appellant, among others, was indicted on two counts of aggravated assault for the injuries sustained by Grimaldo and Garza during the fight. Both counts provided that appellant and the others "intentionally, knowing[ly], or recklessly cause[d] serious bodily injury to" Grimaldo and Garza by "a deadly weapon, to wit: a sharp

---

[5] This interview was videotaped, and the videotape was admitted into evidence at trial without objection.

4

instrument, during the commission of said assault . . . ."[6]

Appellant's case was later severed from the cases of his co-defendants, and the trial court, on October 18, 2007, conducted a hearing on appellant's oral motion to suppress all of the statements he made to police during his December 29, 2006 interview. At the hearing, appellant argued that because he is unable to read and write, his waiver of his *Miranda* rights was done unknowingly and involuntarily; therefore, all of the statements he made to police should be suppressed. The trial court denied appellant's oral motion to suppress and set the case for trial.

Trial commenced on October 30, 2007. After both parties rested, the jury was charged regarding the law for assault, aggravated assault, and the law of parties. Neither the State nor appellant objected to the language contained in the charge. The jury subsequently convicted appellant of both counts of aggravated assault. For the first count pertaining to the aggravated assault of Grimaldo, the jury sentenced appellant to two years' incarceration in the TDCJ-ID with no fine, and for the second count pertaining to the aggravated assault of Garza, the jury sentenced appellant to eight years' incarceration in the TDCJ-ID with no fine. The trial court made a finding as to both counts that a deadly weapon was used in the commission of the offenses, and it ordered the sentences to run concurrently.

On November 27, 2007, appellant filed a motion for new trial, arguing that the trial court had erred in denying his oral motion to suppress and that the admission of his statements made to police negatively impacted the jury's verdict. The trial court denied

---

[6] Prior to trial, the State amended the indictment by striking the word "serious" before "bodily injury." *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp. 2008).

5

appellant's motion for new trial, and this appeal followed.

### III. Appellant's Statements to Police and Motion to Suppress

In his third issue, appellant asserts that the trial court erred in denying his oral motion to suppress because the evidence demonstrated that he was illiterate and incapable of understanding the waiver of his rights. As such, appellant contends that he waived his rights unknowingly and involuntarily and that the statements he made to police should have been suppressed. Appellant requests that this Court abate the appeal and direct the trial court to make findings of fact and conclusions of law on the voluntariness of appellant's statements to police.[7] The State argues that appellant failed to preserve this issue for appeal and that the trial court did not abuse its discretion in admitting appellant's statements to police into evidence.

### A. Applicable Law

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g). Moreover, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). Finally, the complaint made on appeal must comport with the complaint

---

[7] Appellant states in his appellate brief that his counsel moved the trial court to issue findings of fact and conclusions of law as to the voluntariness of his statements made to police and that this motion was served on the State; however, the record does not contain any motions filed by appellant requesting findings of fact and conclusions of law.

made in the trial court or the error is forfeited. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

**B. Discussion**

In this case, the record does not contain a request filed by appellant moving the trial court to issue findings of fact and conclusions of law regarding the voluntariness of his statements made to police. However, the Texas Court of Criminal Appeals has stated that article 38.22, section 6 of the code of criminal procedure imposes a mandatory duty on the trial court to file written findings of fact and conclusions of law when the voluntariness of a statement is challenged. *See State v. Aguilar*, No. PD-059-09, 2009 Tex. Crim. App. LEXIS 154, at **1-2 (Tex. Crim. App. Mar. 11, 2009) (per curiam) (not designated for publication) (citing *Urias v. State*, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004); *Wicker v. State*, 740 S.W.2d 779, 783 (Tex. Crim. App. 1987)); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 2005).

Here, the trial court did not issue findings of fact and conclusions of law as to whether appellant voluntarily waived his *Miranda* rights. Ordinarily, we would abate the appeal and remand the cause to the trial court, directing it to issue written findings of fact and conclusions of law as to the voluntariness of the challenged statement. *See Aguilar*, 2009 Tex. Crim. App. LEXIS 154, at *2. However, the trial court's failure to issue such findings is not dispositive to this appeal because appellant failed to object at trial to the admission of the videotape documenting the statements he made to police.

When the State proffered the videotape for inclusion in the record, appellant's

7

counsel stated that he had "no objection" to the admission of the evidence; the trial court admitted the videotaped statements into evidence, and the videotape was played before the jury. *See Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008); *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986) ("[W]hen the defendant affirmatively asserts during trial he has 'no objection' to the admission of the complained of evidence, he waives any error in the admission of the evidence despite the pre-trial ruling [on a motion to suppress]."); *Harris v. State*, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); *see also Perez v. State*, No. 13-08-296-CR, 2009 Tex. App. LEXIS 1437, at *23 (Tex. App.–Corpus Christi Feb. 26, 2009, pet. ref'd) (mem. op., not designated for publication) ("When evidence is offered during trial and defense counsel affirmatively represents that he has 'no objection' to evidence, any error in the admission of the evidence is waived even if the error had been previously preserved by a suppression motion and adverse ruling."); *Herron v. State*, No. 03-07-00645-CR, 2008 Tex. App. LEXIS 7231, at *6 (Tex. App.–Austin Sept. 26, 2008, no pet.) (mem. op., not designated for publication) ("When appellant's written statement was offered in evidence by the State at trial (State's exhibit 9), appellant's counsel stated that he had no objection. By so stating, counsel waived any error in the trial court's overruling of the motion to suppress and forfeited the right to complain on appeal that the statement was erroneously admitted."). Thus, we hold that appellant failed to preserve this complaint for our review, and we overrule his third issue.

### III. LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his first two issues, appellant contends that the evidence supporting his convictions is legally and factually insufficient. Specifically, appellant argues that: (1) the evidence adduced at trial did not prove that he aided and abetted in the assault on

8

Grimaldo; and (2) the State did not prove that he assaulted Garza with a deadly weapon. The State counters by arguing that the evidence demonstrated that appellant: (1) was a party to the aggravated assault of Grimaldo and Garza; (2) knew of the group's intent to stab Grimaldo; and (3) intended to aid the group in the assaults.

## 1. Applicable Law

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, nor do we substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Beckham*, 29 S.W.3d at 151. Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151.

In a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). This Court will not reverse the jury's verdict unless we can say with some objective basis in the record that the great weight and

preponderance of the evidence contradicts the verdict. *Id.* at 417.

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, a person commits the offense of aggravated assault if he commits assault and causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02(a). A person commits the offense of assault if he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly makes physical contact with another that is offensive or provocative. *See id.* § 22.01(a) (Vernon Supp. 2008).

The State is not required to present direct evidence, such as eyewitness testimony, to establish guilt. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49. The law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49.

## 2. The Aggravated Assault of Garza

The record contains testimony from several witnesses who stated that appellant and

the other occupants of the cars made menacing comments and surrounded the My Block members on the night in question. Afterwards, appellant and the other occupants of the cars threw rocks at the My Block members, which, as Grimaldo noted in his testimony, struck several of the My Block members.

Garza testified that he saw appellant approach him with a knife. In addition, during the course of the fight, appellant cut Garza's arm with the knife, causing his arm to bleed. Later, Noe stabbed Garza in the side with the knife, which caused Garza to bleed profusely. Several photographs of Garza's injuries were admitted into evidence. Investigator Flores described Garza's injuries as cuts to his arm and a stab wound to his side. He noted that, based on his investigation and his experience as a crime scene investigator, these injuries were caused by someone's use of a knife and that a knife is a deadly weapon. Furthermore, several witnesses to the fight observed appellant and Noe attack Garza, but only Garza testified that a knife was used to cut and stab him.

In his statements to police, appellant admitted having a knife and bringing the knife to the scene of the fight. However, he later stated that he left the knife with Guzman prior to fighting; he did not use a knife in the fight; and Noe got the knife used to stab Garza from Rolando. Investigator Flores stated that no knives were found at the crime scene and that appellant's clothing was not stained with Garza's blood.

The apparent inconsistency between Garza and appellant's testimony was within the province of the jury to resolve. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) ("The jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record."). In convicting appellant of the aggravated assault of Garza, the jury obviously

11

accepted Garza's testimony that appellant used a knife to cut Garza's arm during the fight and rejected appellant's testimony that he left his knife with Guzman and did not bring the knife to the fight. We must defer to the jury's determination. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination.") (citing *Jackson*, 443 U.S. at 326).

Based on the foregoing, we conclude that a rational jury could have concluded that appellant used a deadly weapon—a knife—to cause bodily injury to Garza during the course of the fight and, therefore, committed the offense of aggravated assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a), 22.02(a); *see also Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49; *Beckham*, 29 S.W.3d at 151. We therefore find the evidence to be legally sufficient to support appellant's aggravated assault conviction as to Garza. *See Jackson*, 443 U.S. at 318-19; *see also Hooper*, 214 S.W.3d at 13; *Escamilla*, 143 S.W.3d at 817. Furthermore, viewing the evidence in a neutral light, we cannot say that the jury's verdict is so weak that it seems clearly wrong or manifestly unjust or that it is against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414-15. Thus, we conclude that the evidence is also factually sufficient to support appellant's conviction as to Garza. *See id.*

### 3. The Aggravated Assault of Grimaldo

Even though the evidence establishes, and the State concedes, that appellant did not personally attack Grimaldo, appellant was convicted of the aggravated assault of Grimaldo based on the law of parties, as set out in sections 7.02(a) and (b) of the Texas

12

Penal Code. Tex. Penal Code Ann. § 7.02(a)-(b) (Vernon 2003).

Under section 7.02(a)(2), "[a] person is criminally responsible for an offense by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." *Id.* § 7.02(a)(2). "Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement." *Salinas v. State*, 163 S.W.3d 734, 739 (Tex. Crim. App. 2005) (quoting *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)); *see Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986); *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). The evidence must show that, at the time of the offense, the parties were acting together, each contributing some part towards the execution of their common purpose. *Burdine*, 719 S.W.2d at 315. In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the crime and may rely on the defendant's actions that show an understanding and common design to commit the crime. *See Salinas*, 163 S.W.3d at 740; *see also Burdine*, 719 S.W.2d at 315; *Cordova*, 698 S.W.2d at 111; *Beier v. State*, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985).

In the instant case, appellant, along with Noe, called Grimaldo during the barbecue to tell him that they were going to "fuck him up." Appellant and his friends later followed through on their promise when the girls in the Malibu cursed and taunted the My Block members; appellant and his friends began throwing rocks at the My Block members; and, finally, appellant and his male companions attacked the male My Block members. Moreover, appellant admitted to police that he participated in the fight and that he brought

13

a knife to the scene of the fight. Appellant later told police that he left the knife with Guzman and that he did not use a knife in the fight. Appellant also pointed the finger at Rolando, accusing him of using a knife to stab Grimaldo in the side and noting that he was unaware of Rolando's actions.

We find that it was reasonable for the jury to infer that appellant and his friends intended and agreed to fight the My Block members, especially in light of the telephone call appellant and Noe made to Grimaldo, the group's throwing of rocks at the My Block members, and appellant's participation in the fight with the rest of the group. *See Armstead v. State*, 977 S.W.2d 791, 797 (Tex. App.–Fort Worth 1998, pet. ref'd) ("In determining the legal sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.'") (quoting *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991)). Furthermore, during the fight with the My Block members, appellant contributed to the assault of Grimaldo by attacking Garza with a knife and preventing Garza from assisting Grimaldo. *See Salinas*, 163 S.W.3d at 739; *Burdine*, 719 S.W.2d at 315.

Appellant argues on appeal that the State did not present any direct evidence of an agreement between Grimaldo's attackers and appellant to attack Grimaldo with a knife. However, it is well-settled that participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence. *See Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987). Instead, as previously mentioned, the fact finder may rely on the actions of the defendant that show an understanding and common design

14

to do the prohibited act and may use circumstantial evidence to prove party status. *See Salinas*, 163 S.W.3d at 739. As stated before, the evidence demonstrates that appellant and his friends intended to attack the My Block members, and appellant admitted to bringing a knife to the scene of the fight. Grimaldo was subsequently stabbed during the fight by appellant's friends, and Garza was attacked by appellant, who wielded a knife.

Therefore, based on the evidence presented at trial, we conclude that a rational jury could have convicted appellant for the aggravated assault of Grimaldo based upon the law of parties. *See* TEX. PENAL CODE ANN. §§ 7.02(a)(2), 22.01(a), 22.02(a); *see also Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49; *Beckham*, 29 S.W.3d at 151. Moreover, we cannot say that the evidence supporting appellant's conviction for the aggravated assault of Grimaldo is so weak that it seems clearly wrong and manifestly unjust, or that it is against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414-15. Accordingly, we conclude that the evidence supporting appellant's convictions is legally and factually sufficient. We overrule appellant's first two issues.

## IV. CONCLUSION

Having overruled appellant's issues, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b)
Memorandum Opinion delivered and
filed this the 22nd day of October, 2009.

15