NUMBER 13-08-00085-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

JUAN MIGUEL TORRES, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 197th District Court of Willacy County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Justice Garza
 Appellant, Juan Miguel Torres, was charged by indictment with two counts of
aggravated assault, a second-degree felony. See Tex. Penal Code Ann. § 22.02(a)-(b)
(Vernon Supp. 2008). A jury convicted appellant of both counts, and appellant was
sentenced to two years' incarceration in the Institutional Division of the Texas Department
of Criminal Justice ("TDCJ-ID") for the first count and eight years' incarceration for the
second count. The prison terms were ordered to run concurrently. On appeal, appellant
argues that: (1) the evidence supporting his convictions is legally and factually insufficient;
and (2) the trial court erred in overruling his motion to suppress and abused its discretion
in admitting statements made by appellant to police. We affirm.

I. Factual and Procedural Background

 The underlying offenses pertained to a fight that transpired on December 28, 2006. 
On the evening in question, Samuel Garza, Irene Sanchez, Erin Rodriguez, Greg Lee
Ramirez, Rudy Loya, Eduardo Andrade, and Max Grimaldo were barbecuing at Loya's
apartment in Raymondville, Texas. Grimaldo testified at trial that during the barbecue, he
received a call from appellant and his brother, Noe Torres, threatening to "fuck [him] up." 
Grimaldo did not think anything of the telephone call, and the barbecue continued. Later
that evening, the group, referred to at trial as "My Block," (1) left the apartment on foot to go
home. 

 A white Chevrolet Malibu occupied by several girls drove past the group as the My
Block members walked home. As the Malibu drove by, the girls shouted obscenities at the
group. Several My Block members shouted obscenities back at the girls in the Malibu, and
the My Block members subsequently cut through a field near the "Charter School" to avoid
any further confrontations. Shortly thereafter, the Malibu and another car, a brown
Cadillac, surrounded the group. The occupants got out of the cars and began walking
toward the My Block members, throwing rocks as they approached them. (2) According to
Grimaldo, several of the rocks struck My Block members. Rodriguez testified that once
they stopped throwing rocks at the My Block members, the car occupants told one of their
members to get a pipe or some other weapon. Rodriguez noted that the My Block
members were severely outnumbered and that a fight ensued. (3)

 Several witnesses stated that the fighting lasted five or six minutes, but the entire
confrontation lasted thirty to forty minutes. Garza testified that the car occupants started
the fight and that he was attacked by several people, including appellant. Garza noted that
he received cuts on his arm and a stab wound on the side of his body. Garza recalled that
appellant used a knife to cut his arm and that Noe stabbed him in the side of his body. (4) 
Grimaldo testified that he was attacked by several different people, including Robert
Vasquez, Gilbert Vasquez, and Rolando Mendoza. Grimaldo further testified that Rolando
brought a knife to the fight and that Rolando used that knife to stab him in the side of his
body. As a result of their stab wounds and cuts, Garza and Grimaldo were hospitalized for
several days. 

 At trial, the State called most of the My Block members to testify about the fight. All
of the witnesses testified that Grimaldo and Garza were stabbed during the fight and that
the fight had occurred in a dimly lit field, which limited visibility. Only Grimaldo and Garza
recalled seeing knives being used by the car occupants. Furthermore, several of the
witnesses testified that they did not recall that any weapons were used during the fight and
that they believed the fight was solely a fist fight. Rodriguez, however, stated that she saw
one of the car occupants using a weapon "like a stick." In any event, after Noe stabbed
Garza, the groups dispersed and the My Block members asked a local resident to call for
help. Police investigating the scene found pools of blood and a bloody shirt at the scene. 
No weapons were found.

 The following day, appellant voluntarily went to the Raymondville police station to
give a statement about what occurred that night. Appellant was interviewed on December
29, 2006, at 1:10 p.m. (5) Prior to questioning appellant, police read appellant his Miranda
rights, and appellant initialed the document explaining the Miranda rights. See generally
Miranda v. Arizona, 384 U.S. 436 (1966). During the interview, appellant admitted that he
had a knife that evening and that he brought the knife to the fight. Appellant also stated
that he could not read. Raymondville Police Department Patrol Supervisor Marcelino
Flores testified that he was aware that appellant could not read but that he was unaware
that appellant allegedly could not write. However, Flores noted that he asked appellant
whether he understood the Miranda rights that were read to him, and appellant told him
that he understood his rights and subsequently initialed the document explaining his rights. 
Flores also testified that in the interview, appellant later denied using a weapon at the fight
and accused Rolando of bringing a knife to the fight. Appellant told Flores that "we gave
all of our stuff to Nina and we were expecting to have a clean fight." 

 On September 13, 2007, appellant, among others, was indicted on two counts of
aggravated assault for the injuries sustained by Grimaldo and Garza during the fight. Both
counts provided that appellant and the others "intentionally, knowing[ly], or recklessly
cause[d] serious bodily injury to" Grimaldo and Garza by "a deadly weapon, to wit: a sharp
instrument, during the commission of said assault . . . ." (6) 

 Appellant's case was later severed from the cases of his co-defendants, and the trial
court, on October 18, 2007, conducted a hearing on appellant's oral motion to suppress
all of the statements he made to police during his December 29, 2006 interview. At the
hearing, appellant argued that because he is unable to read and write, his waiver of his
Miranda rights was done unknowingly and involuntarily; therefore, all of the statements he
made to police should be suppressed. The trial court denied appellant's oral motion to
suppress and set the case for trial.

 Trial commenced on October 30, 2007. After both parties rested, the jury was
charged regarding the law for assault, aggravated assault, and the law of parties. Neither
the State nor appellant objected to the language contained in the charge. The jury
subsequently convicted appellant of both counts of aggravated assault. For the first count
pertaining to the aggravated assault of Grimaldo, the jury sentenced appellant to two years'
incarceration in the TDCJ-ID with no fine, and for the second count pertaining to the
aggravated assault of Garza, the jury sentenced appellant to eight years' incarceration in
the TDCJ-ID with no fine. The trial court made a finding as to both counts that a deadly
weapon was used in the commission of the offenses, and it ordered the sentences to run
concurrently.

 On November 27, 2007, appellant filed a motion for new trial, arguing that the trial
court had erred in denying his oral motion to suppress and that the admission of his
statements made to police negatively impacted the jury's verdict. The trial court denied
appellant's motion for new trial, and this appeal followed. 

III. Appellant's Statements to Police and Motion to Suppress 

 In his third issue, appellant asserts that the trial court erred in denying his oral
motion to suppress because the evidence demonstrated that he was illiterate and
incapable of understanding the waiver of his rights. As such, appellant contends that he
waived his rights unknowingly and involuntarily and that the statements he made to police
should have been suppressed. Appellant requests that this Court abate the appeal and
direct the trial court to make findings of fact and conclusions of law on the voluntariness
of appellant's statements to police. (7) The State argues that appellant failed to preserve this
issue for appeal and that the trial court did not abuse its discretion in admitting appellant's
statements to police into evidence. 

A. Applicable Law

 To preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds for the desired
ruling if they are not apparent from the context of the request, objection, or motion. Tex.
R. App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op.
on reh'g). Moreover, the trial court must have ruled on the request, objection, or motion,
either expressly or implicitly, or the complaining party must have objected to the trial court's
refusal to rule. Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004). Finally, the complaint made on appeal must comport with the complaint
made in the trial court or the error is forfeited. Heidelberg v. State, 144 S.W.3d 535, 537
(Tex. Crim. App. 2004); Bell v. State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996); Rezac
v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

B. Discussion

 In this case, the record does not contain a request filed by appellant moving the trial
court to issue findings of fact and conclusions of law regarding the voluntariness of his
statements made to police. However, the Texas Court of Criminal Appeals has stated that
article 38.22, section 6 of the code of criminal procedure imposes a mandatory duty on the
trial court to file written findings of fact and conclusions of law when the voluntariness of
a statement is challenged. See State v. Aguilar, No. PD-059-09, 2009 Tex. Crim. App.
LEXIS 154, at **1-2 (Tex. Crim. App. Mar. 11, 2009) (per curiam) (not designated for
publication) (citing Urias v. State, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004); Wicker v.
State, 740 S.W.2d 779, 783 (Tex. Crim. App. 1987)); see also Tex. Code Crim. Proc. Ann.
art. 38.22, § 6 (Vernon 2005). 

 Here, the trial court did not issue findings of fact and conclusions of law as to
whether appellant voluntarily waived his Miranda rights. Ordinarily, we would abate the
appeal and remand the cause to the trial court, directing it to issue written findings of fact
and conclusions of law as to the voluntariness of the challenged statement. See Aguilar,
2009 Tex. Crim. App. LEXIS 154, at *2. However, the trial court's failure to issue such
findings is not dispositive to this appeal because appellant failed to object at trial to the
admission of the videotape documenting the statements he made to police. 

 When the State proffered the videotape for inclusion in the record, appellant's
counsel stated that he had "no objection" to the admission of the evidence; the trial court
admitted the videotaped statements into evidence, and the videotape was played before
the jury. See Holmes v. State, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008); Moraguez
v. State, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986) ("[W]hen the defendant affirmatively
asserts during trial he has 'no objection' to the admission of the complained of evidence,
he waives any error in the admission of the evidence despite the pre-trial ruling [on a
motion to suppress]."); Harris v. State, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); see
also Perez v. State, No. 13-08-296-CR, 2009 Tex. App. LEXIS 1437, at *23 (Tex.
App.-Corpus Christi Feb. 26, 2009, pet. ref'd) (mem. op., not designated for publication)
("When evidence is offered during trial and defense counsel affirmatively represents that
he has 'no objection' to evidence, any error in the admission of the evidence is waived
even if the error had been previously preserved by a suppression motion and adverse
ruling."); Herron v. State, No. 03-07-00645-CR, 2008 Tex. App. LEXIS 7231, at *6 (Tex.
App.-Austin Sept. 26, 2008, no pet.) (mem. op., not designated for publication) ("When
appellant's written statement was offered in evidence by the State at trial (State's exhibit
9), appellant's counsel stated that he had no objection. By so stating, counsel waived any
error in the trial court's overruling of the motion to suppress and forfeited the right to
complain on appeal that the statement was erroneously admitted."). Thus, we hold that
appellant failed to preserve this complaint for our review, and we overrule his third issue.

III. Legal and Factual Sufficiency of the Evidence

 In his first two issues, appellant contends that the evidence supporting his
convictions is legally and factually insufficient. Specifically, appellant argues that: (1) the
evidence adduced at trial did not prove that he aided and abetted in the assault on
Grimaldo; and (2) the State did not prove that he assaulted Garza with a deadly weapon.
The State counters by arguing that the evidence demonstrated that appellant: (1) was a
party to the aggravated assault of Grimaldo and Garza; (2) knew of the group's intent to
stab Grimaldo; and (3) intended to aid the group in the assaults. 

1. Applicable Law

 In conducting a legal sufficiency review, we view the relevant evidence in the light
most favorable to the verdict to determine whether a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19
(1979)); Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact
is the sole judge of the facts, the credibility of the witnesses, and the weight given to
testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Beckham v. State,
29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd). We do not
reevaluate the weight and credibility of the evidence, nor do we substitute our own
judgment for the trier of fact. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000);
Beckham, 29 S.W.3d at 151. Instead, we consider whether the jury reached a rational
decision. Beckham, 29 S.W.3d at 151.

 In a factual sufficiency review, we review the evidence in a neutral light to determine
whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly
unjust or against the great weight and preponderance of the evidence. Watson v. State,
204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). This Court will not reverse the jury's
verdict unless we can say with some objective basis in the record that the great weight and
preponderance of the evidence contradicts the verdict. Id. at 417.

 Both legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet.
ref'd). Under a hypothetically correct jury charge, a person commits the offense of
aggravated assault if he commits assault and causes serious bodily injury to another or
uses or exhibits a deadly weapon during the commission of the assault. See Tex. Penal
Code Ann. § 22.02(a). A person commits the offense of assault if he: (1) intentionally,
knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly
threatens another with imminent bodily injury; or (3) intentionally or knowingly makes
physical contact with another that is offensive or provocative. See id. § 22.01(a) (Vernon
Supp. 2008). 

 The State is not required to present direct evidence, such as eyewitness testimony,
to establish guilt. See Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).
"Circumstantial evidence is as probative as direct evidence in establishing the guilt of the
actor, and circumstantial evidence alone can be sufficient to establish guilt." Hooper, 214
S.W.3d at 13; Guevara, 152 S.W.3d at 49. The law does not require that each fact "point
directly and independently to the guilt of the appellant, as long as the cumulative effect of
all the incriminating facts is sufficient to support the conviction." Hooper, 214 S.W.3d at
13; Guevara, 152 S.W.3d at 49.

2. The Aggravated Assault of Garza

 The record contains testimony from several witnesses who stated that appellant and
the other occupants of the cars made menacing comments and surrounded the My Block
members on the night in question. Afterwards, appellant and the other occupants of the
cars threw rocks at the My Block members, which, as Grimaldo noted in his testimony,
struck several of the My Block members. 

 Garza testified that he saw appellant approach him with a knife. In addition, during
the course of the fight, appellant cut Garza's arm with the knife, causing his arm to bleed. 
Later, Noe stabbed Garza in the side with the knife, which caused Garza to bleed
profusely. Several photographs of Garza's injuries were admitted into evidence. 
Investigator Flores described Garza's injuries as cuts to his arm and a stab wound to his
side. He noted that, based on his investigation and his experience as a crime scene
investigator, these injuries were caused by someone's use of a knife and that a knife is a
deadly weapon. Furthermore, several witnesses to the fight observed appellant and Noe
attack Garza, but only Garza testified that a knife was used to cut and stab him. 

 In his statements to police, appellant admitted having a knife and bringing the knife
to the scene of the fight. However, he later stated that he left the knife with Guzman prior
to fighting; he did not use a knife in the fight; and Noe got the knife used to stab Garza
from Rolando. Investigator Flores stated that no knives were found at the crime scene and
that appellant's clothing was not stained with Garza's blood. 

 The apparent inconsistency between Garza and appellant's testimony was within
the province of the jury to resolve. See Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim.
App. 2008) ("The jury is in the best position to judge the credibility of a witness because
it is present to hear the testimony, as opposed to an appellate court who relies on the cold
record."). In convicting appellant of the aggravated assault of Garza, the jury obviously
accepted Garza's testimony that appellant used a knife to cut Garza's arm during the fight
and rejected appellant's testimony that he left his knife with Guzman and did not bring the
knife to the fight. We must defer to the jury's determination. See Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences,
we presume that the fact finder resolved the conflicts in favor of the prosecution and
therefore defer to that determination.") (citing Jackson, 443 U.S. at 326). 

 Based on the foregoing, we conclude that a rational jury could have concluded that
appellant used a deadly weapon--a knife--to cause bodily injury to Garza during the
course of the fight and, therefore, committed the offense of aggravated assault. See Tex.
Penal Code Ann. §§ 22.01(a), 22.02(a); see also Hooper, 214 S.W.3d at 13; Guevara, 152
S.W.3d at 49; Beckham, 29 S.W.3d at 151. We therefore find the evidence to be legally
sufficient to support appellant's aggravated assault conviction as to Garza. See Jackson,
443 U.S. at 318-19; see also Hooper, 214 S.W.3d at 13; Escamilla, 143 S.W.3d at 817. 
Furthermore, viewing the evidence in a neutral light, we cannot say that the jury's verdict
is so weak that it seems clearly wrong or manifestly unjust or that it is against the great
weight and preponderance of the evidence. See Watson, 204 S.W.3d at 414-15. Thus,
we conclude that the evidence is also factually sufficient to support appellant's conviction
as to Garza. See id.

3. The Aggravated Assault of Grimaldo

 Even though the evidence establishes, and the State concedes, that appellant did
not personally attack Grimaldo, appellant was convicted of the aggravated assault of
Grimaldo based on the law of parties, as set out in sections 7.02(a) and (b) of the Texas
Penal Code. Tex. Penal Code Ann. § 7.02(a)-(b) (Vernon 2003). 

 Under section 7.02(a)(2), "[a] person is criminally responsible for an offense by the
conduct of another if . . . acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense . . . ." Id. § 7.02(a)(2). "Evidence is sufficient to convict under the law
of parties where the defendant is physically present at the commission of the offense and
encourages its commission by words or other agreement." Salinas v. State, 163 S.W.3d
734, 739 (Tex. Crim. App. 2005) (quoting Ransom v. State, 920 S.W.2d 288, 302 (Tex.
Crim. App. 1994)); see Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986);
Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). The evidence must show
that, at the time of the offense, the parties were acting together, each contributing some
part towards the execution of their common purpose. Burdine, 719 S.W.2d at 315. In
determining whether a defendant participated in an offense as a party, the court may
examine the events occurring before, during, and after the commission of the crime and
may rely on the defendant's actions that show an understanding and common design to
commit the crime. See Salinas, 163 S.W.3d at 740; see also Burdine, 719 S.W.2d at 315;
Cordova, 698 S.W.2d at 111; Beier v. State, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985).

 In the instant case, appellant, along with Noe, called Grimaldo during the barbecue
to tell him that they were going to "fuck him up." Appellant and his friends later followed
through on their promise when the girls in the Malibu cursed and taunted the My Block
members; appellant and his friends began throwing rocks at the My Block members; and,
finally, appellant and his male companions attacked the male My Block members. 
Moreover, appellant admitted to police that he participated in the fight and that he brought
a knife to the scene of the fight. Appellant later told police that he left the knife with
Guzman and that he did not use a knife in the fight. Appellant also pointed the finger at
Rolando, accusing him of using a knife to stab Grimaldo in the side and noting that he was
unaware of Rolando's actions. 

 We find that it was reasonable for the jury to infer that appellant and his friends
intended and agreed to fight the My Block members, especially in light of the telephone call
appellant and Noe made to Grimaldo, the group's throwing of rocks at the My Block
members, and appellant's participation in the fight with the rest of the group. See
Armstead v. State, 977 S.W.2d 791, 797 (Tex. App.-Fort Worth 1998, pet. ref'd) ("In
determining the legal sufficiency of the evidence to show appellant's intent, and faced with
a record that supports conflicting inferences, we 'must presume--even if it does not
affirmatively appear in the record--that the trier of fact resolved any such conflict in favor
of the prosecution, and must defer to that resolution.'") (quoting Matson v. State, 819
S.W.2d 839, 846 (Tex. Crim. App. 1991)). Furthermore, during the fight with the My Block
members, appellant contributed to the assault of Grimaldo by attacking Garza with a knife
and preventing Garza from assisting Grimaldo. See Salinas, 163 S.W.3d at 739; Burdine,
719 S.W.2d at 315. 

 Appellant argues on appeal that the State did not present any direct evidence of an
agreement between Grimaldo's attackers and appellant to attack Grimaldo with a knife. 
However, it is well-settled that participation in an enterprise may be inferred from the
circumstances and need not be shown by direct evidence. See Beardsley v. State, 738
S.W.2d 681, 685 (Tex. Crim. App. 1987). Instead, as previously mentioned, the fact finder
may rely on the actions of the defendant that show an understanding and common design
to do the prohibited act and may use circumstantial evidence to prove party status. See
Salinas, 163 S.W.3d at 739. As stated before, the evidence demonstrates that appellant
and his friends intended to attack the My Block members, and appellant admitted to
bringing a knife to the scene of the fight. Grimaldo was subsequently stabbed during the
fight by appellant's friends, and Garza was attacked by appellant, who wielded a knife.

 Therefore, based on the evidence presented at trial, we conclude that a rational jury
could have convicted appellant for the aggravated assault of Grimaldo based upon the law
of parties. See Tex. Penal Code Ann. §§ 7.02(a)(2), 22.01(a), 22.02(a); see also Hooper,
214 S.W.3d at 13; Guevara, 152 S.W.3d at 49; Beckham, 29 S.W.3d at 151. Moreover,
we cannot say that the evidence supporting appellant's conviction for the aggravated
assault of Grimaldo is so weak that it seems clearly wrong and manifestly unjust, or that
it is against the great weight and preponderance of the evidence. See Watson, 204
S.W.3d at 414-15. Accordingly, we conclude that the evidence supporting appellant's
convictions is legally and factually sufficient. We overrule appellant's first two issues. 

IV. Conclusion

 Having overruled appellant's issues, we affirm the judgment of the trial court.

 ________________________

 DORI CONTRERAS GARZA

 Justice 


Do Not Publish. 

Tex. R. App. P. 47.2(b)

Memorandum Opinion delivered and 

filed this the 22nd day of October, 2009. 
1. Testimony at trial established that the group called itself "My Block," but group members denied that
"My Block" was a criminal street gang.
2. Patrol Supervisor Marcelino Flores, then an investigator with the Raymondville Police Department,
identified the occupants of the cars as Robert Vasquez, Gilbert Vasquez, Nina Guzman, Martin Vera, Noe
Torres, Guadalupe Ramirez, Rolando Mendoza, George Mendoza, and appellant. Later testimony revealed
that several others were present at the scene and involved in the fight, including David and Kenny Villa, Chris
Guzman, and an individual identified as "Casper." Only the males in both groups participated in the fight. The
females in both groups watched the fight from afar. 
3. Loya and several other My Block members testified that they did not desire to fight appellant and
his friends. 
4. Investigator Flores testified that based on his law enforcement experience, a knife is a deadly
weapon that can cause serious bodily injury.
5. This interview was videotaped, and the videotape was admitted into evidence at trial without
objection.
6. Prior to trial, the State amended the indictment by striking the word "serious" before "bodily injury."
See Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2008).
7. Appellant states in his appellate brief that his counsel moved the trial court to issue findings of fact
and conclusions of law as to the voluntariness of his statements made to police and that this motion was
served on the State; however, the record does not contain any motions filed by appellant requesting findings
of fact and conclusions of law.